[No. 12527.    Department One.    November 10, 1915.]

MARTIN SNYDER, *Respondent*, v. GREAT NORTHERN RAILWAY
COMPANY, *Appellant*.[1]

COMMERCE—"INTERSTATE COMMERCE"—PERSONS ENGAGED IN.    An
engineer on a switch engine hauling cars part of which were loaded
with interstate freight was engaged in interstate commerce, within
the meaning of the Federal employers' liability act.

MASTER AND SERVANT—INJURY TO SERVANT—CAUSE OF ACCIDENT—
DERAILMENT OF LOCOMOTIVE—QUESTION FOR JURY.    Whether the cause
of a switch engine's leaving the rails was a defective switch, or the
more probable reason that the brake block on the engine was loose
and dropped off and was run over by the drivers, is a question for
the jury, where there was evidence that the padlock of the switch
was out of order and would not lock, that the engine, properly lined
up with the track, left the rails immediately opposite the switch
block, and upon examination there was a mark upon the point of
the switch rail indicating that the switch was partly open, causing
the derailment.

SAME—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE— FEDERAL
EMPLOYERS' LIABILITY—STATUTES.    Under the Federal employers' lia-
bility act, providing that contributory negligence shall not bar a re-
covery, but that the damages shall be diminished by the jury in pro-
portion to the amount of negligence attributable to the employee,
it is reversible error to refuse a requested instruction requiring such
diminution.

DAMAGES—PERSONAL INJURIES—EVIDENCE—MORTALITY TABLES.    In
a personal injury case, mortality tables showing plaintiff's expectancy
of life are inadmissible, where there was no evidence of permanent
injuries and the most that can be said is that the plaintiff developed
a neurasthenic condition after his injuries.

MASTER AND SERVANT—INJURY TO SERVANT—DEFECTIVE APPLIANCE
—EVIDENCE—ADMISSIBILITY.    Upon an issue as to whether the de-
railment of a switch engine was due to a defective switch which
would not lock, evidence that a large number of children live in
the immediate vicinity, is inadmissible, as opening a field for con-
jecture, where it is not shown that any children had ever been at or
near the switch, or that the switch had been turned, except that the
engine left the track at the switch.

[1]Reported in 152 Pac. 703.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered April 9, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a railway engineer in jumping from a locomotive. Reversed.

*Charles S. Albert* and *Thomas Balmer*, for appellant.

*F. A. McMaster*, for respondent.

MOUNT, J.—This action was brought in the superior court for Spokane county under the employers' liability act of Congress, to recover for personal injuries alleged to have been sustained by the plaintiff in jumping from a locomotive which had left the rails upon a side track in the yards at Spokane. The trial of the case resulted in a verdict in favor of the plaintiff for $9,560. Immediately upon the return of the verdict, the defendant filed a motion for judgment notwithstanding the verdict and for a new trial, upon all the statutory grounds. The court made a conditional order for a new trial unless the plaintiff would remit $3,000 from the verdict. This was done, and the motions for a new trial and for judgment *non obstante* were denied. The defendant has appealed from the reduced judgment.

It appears that the plaintiff was employed by the defendant as an engineer upon a switch engine. His duties as such engineer were to switch cars in the yards at Spokane and Hillyard, a suburb of Spokane, about four miles distant. On the morning of April 2, 1912, the plaintiff with a crew of men was hauling twenty-one freight cars from Hillyard on a side track into the yards at Spokane. When in the Spokane yards, while running from four to eight miles per hour, at or near a switch leading into the Dean Lumber Company's yard, the engine left the rails and plowed along upon the ties for a short distance, when the engineer, thinking that the engine was about to tip over, jumped and was bruised upon his back. At the time the engine was derailed, there were several cars in the train that were loaded with interstate freight.

The padlock upon the switch, at or near which the engine left the track, was out of order so that it would not lock. There was no other defect in the switch when the engine left the rails at or near the switch. The front trucks of the first car following the engine also left the rails; the rear trucks of that car, and all the other cars, remained upon the track.

The court instructed the jury to the effect that, if they found that the plaintiff's usual employment was to switch cars carrying interstate freight and other cars carrying intrastate freight, and that the plaintiff was required to haul these indiscriminately without any control in the matter, that, in law, would constitute him an employee engaged in interstate commerce. It is argued by the appellant that this instruction was erroneous under the ruling of the supreme court of the United States in the case of *Illinois Cent. R. Co. v. Behrens*, 233 U. S. 473. That was a case where the intestate was in the service of the railroad company as a member of a crew attached to a switch engine operated exclusively within the city of New Orleans. He was the fireman, and came to his death while at his post of duty through a head-on collision. At the time of the collision, the crew was moving several cars loaded with freight which was wholly intrastate. Upon completing that movement, it was to have gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the state. The question of law was whether upon these facts it can be said that the intestate, at the time of his fatal injury, was employed in interstate commerce within the meaning of the employers' liability act. As we read the decision in that case, it was held that there could be no recovery because the intestate, at the time of his death, was engaged in hauling cars loaded with freight which was wholly intrastate, and not interstate. It was said in that case, quoting from another case:

" 'There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier

is engaged in interstate commerce and while the employee is employed by the carrier in such commerce. . . . The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?' "

After citing a number of authorities, the court continues:

"Here, at the time of the fatal injury the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service of interstate commerce, and so the injury and resulting death were not within the statute."

In this case, it was shown that the plaintiff, at the time of the injury, was hauling cars part of which were loaded with intrastate freight and part with interstate freight. We are of the opinion, therefore, that, under the rule announced by the supreme court of the United States in the case cited, the plaintiff in this case was engaged in interstate commerce at the time of the injury, and that the instruction of the trial court upon this question was correct.

The appellant further argues at length that a verdict should have been directed for the defendant, and that the motion for a judgment notwithstanding the verdict should have been granted, for the reason that there was no evidence upon which the jury could predicate negligence on the part of the appellant, or could find that the defective condition of the switch caused the injury. It was shown that the padlock which locked the switch was not locked, or could not be locked. The padlock was out of order. The evidence shows conclusively that the switch, at or near which the engine left the rails, was a standard switch, and that the switch block at the side of the track was a heavy cast iron fixture. Near the top of this fixture was a collar in which were slots. The handle used to turn the switch was a heavy iron handle, which, when the switch was set properly, fell into a slot, and by placing the hasp of the padlock in a hole in this handle, it was impossible to raise the handle or turn the switch.

The plaintiff testified, that when the engine came to this switch it was properly lined up with the track; that immediately opposite the switch block, the engine left the rails; that, upon an examination made later, there was a mark upon the point of the switch rail which indicated that the switch was partly open, and that the engine, by reason of striking the switch point, was thrown from the track.

The contention of the appellant was that the brake block upon the engine was loose and was not inspected by the engineer in the morning, as was his duty before taking the engine out; and that, when the engine came about opposite the switch, the brake block dropped off and the drivers ran over it, throwing the engine from the rails; and also the forward trucks of the first car, and that the rear trucks of that car and the others cars remained upon the track. It is argued by the appellant that it was impossible for the switch to have been open, or partly open; and that the switch could not have been opened by the passing engine without the lever flying up, resting upon the shoulder of the switch block for a moment, and then being thrown back and again falling into the slot so as to let the following cars rest upon the track.

There is no doubt much force in appellant's contentions. And while it is highly improbable that the engine left the track by reason of the padlock not being in proper condition —because it seems impossible that, even if the hasp had been out of the handle which turns the switch, any engine upon the rails could have lifted the handle and turned the switch— and while it is also much more probable that the appellant's theory of the derailment is the correct one, yet we think this was properly a question for the jury under the circumstances, and the court, therefore, did not err in refusing to take the case from the jury, or to direct a verdict.

At the trial of the case, the court refused to instruct the jury as follows:

"If you shall find that the plaintiff was guilty of negligence which contributed to cause his injury, and that the defend-

ant was also guilty of negligence, which contributed with the negligence of the plaintiff to cause injury to him, then it is your duty to diminish the amount which in your opinion, under the evidence, you believe that the plaintiff herein will be entitled to recover by reason of the negligence of the defendant, by an amount in proportion to the amount of negligence attributable to the plaintiff."

No instruction was given to the jury upon this point. It is apparent, we think, that this instruction, or an instruction of this kind, should have been given to the jury.

In the case of *Seaboard Air Line R. v. Tilghman*, 237 U. S. 499, the supreme court of the United States said:

"At common law there could be no recovery in such a case, the contributory negligence being a complete bar or defense. But this statute rejects the common law rule and adopts another, deemed more reasonable, by declaring (§ 3), 'the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.' This is followed by a proviso to the effect that contributory negligence on the part of the employee shall not be considered for any purpose where the carrier's fault consisted in the violation of a statute—a Federal statute—enacted for the safety of employees. . . . It means, and can only mean, as this court has held, that, where the causal negligence is attributable partly to the carrier and partly to the injured employee, he shall not recover full damages, but only a diminished sum bearing the same relation to the full damages that the negligence attributable to the carrier bears to the negligence attributable to both; the purpose being to exclude from the recovery a proportional part of the damages corresponding to the employee's contribution to the total negligence."

The court further said:

"At the trial the court instructed the jury that, if they found the plaintiff was injured through the concurring negligence of the railway company and himself, they should determine the full amount of damages sustained by him, 'and then deduct from that whatever amount you think would be proper for the contributory negligence.'"

It was held that this was an erroneous instruction because,

"No reference was made to the rule of proportion specified in the statute or to the occasion for contrasting the negligence of the employee with the total causal negligence as a means of ascertaining what proportion of the full damages should be excluded from the recovery. On the contrary, the matter of diminishing the damages was committed to the jury without naming any standard to which their action should conform other than their own conception of what was reasonable. In this there was a failure to give proper effect to the part of the statute before quoted. It prescribes a rule for determining the amount of the deduction required to be made, and the jury should have been advised of that rule and its controlling force."

It is plain, therefore, that, under the rule laid down by the supreme court of the United States. in cases of this kind, the instruction should have been given, and its refusal was erroneous.

In the course of the trial, the court permitted the introduction of mortality tables to show the expectancy of life of the plaintiff. It is argued by the defendant that this was error because it was not shown that the plaintiff was permanently injured. We think this position must be sustained. The most the evidence showed was that the plaintiff developed a neurasthenic condition after his injuries. He testified that, since his injuries, he has been required to walk with a cane, and with a limp or dragging of the foot. But we think there was no evidence of the fact that this dragging of the foot or limping was the result of the injuries which he received at the time of the accident. None of the doctors testified, so far as the record shows, that the natural and reasonably probable result of the injuries which the plaintiff received at the time of the accident would be a permanent injury. The court therefore erred in receiving these mortality tables in evidence.

It was alleged in the complaint that a large number of people and children live in the immediate vicinity of the said switch, and that the switch was an attraction to children and

others. It was not shown, however, that any children had ever been at or near the switch, or the switch stand. We think the court should have withdrawn this question from the jury. It simply opened a field of conjecture for the jury to speculate upon whether children, having lived in the vicinity of the switch, might have turned the switch on the morning of the accident. There was no evidence that the switch was even turned, except the mere fact that the engine left the track at or near the switch. The switch was in good condition and was not out of repair in any way, except that the padlock upon the switch would not lock. We think the court should have taken this question of the children having meddled with the switch entirely from the jury.

Several other errors are assigned which we think are of no special importance at this time, because if sustained would result only in a new trial, and probably will not arise upon the new trial which must result from the errors already considered.

The judgment of the trial court is reversed and the cause remanded.

MORRIS, C. J., MAIN, HOLCOMB, and CHADWICK, JJ., concur.