273 P.2d 756

DOMINGUEZ

v.

ALBUQUERQUE BUS CO. et al.

No. 5765.

Supreme Court of New Mexico.

Aug. 18, 1954.

Quincy D. Adams, J. L. Leftow and James H. Foley, Albuquerque, for appellants.

Joseph L. Smith and Lorenzo A. Chavez, Albuquerque, for appellee.

SEYMOUR, Justice.

Plaintiff's-Appellee's action for personal injuries resulted in jury verdict for $5,000, from which verdict and the judgment entered thereon, defendants-appellants appeal.

Appellee was a woman 54 years old, who worked as a housekeeper and maid. In October, 1952, she was riding as a passenger on a bus of the appellant Albuquerque Bus Company. When she reached her destination, she pulled the buzzer and the bus came to a stop. She was about to get off the bus at the side rear door and had just extended her foot through the door when it closed on her ankle. Some school children called, "There's a lady in the door," and the doors reopened; the appellee got off the bus and the bus went on.

Testimony of the appellee and of medical witnesses shows an injured and painful ankle condition. The bus company did not deny in the trial court, nor does it deny here, that appellee is suffering from an injury to her ankle. The basic position of the bus company is that it is physically impossible that the injury was caused by the bus company, i. e., the action of its driver in closing the door on the appellee's ankle. The bus company's reliance on this proposition is based chiefly upon the operation of the automatic doors on the bus. The edges of the door, which opens in the middle, have a hollow rubber fitting with a micro-switch inside the hollow rubber. The rubber edges of the two parts of the door, when it is closed, are approximately five inches in width. The micro-switch mechanism is such that, when the rubber edges contact an obstacle, the door automatically bounces open again. At the trial of the case, the same or an identical bus was furnished for demonstration, and members of the jury allowed the doors to close on various members of their body with no resulting injury.

There are other facts, and those that are important to this decision will be considered under the points to which they are relevant.

Appellant relies upon three points: first, that there is no substantial evidence to sustain the verdict; second, that the admission of evidence as to appellee's life expectancy was erroneous and prejudicial; and third, that the verdict was excessive.

It is impossible to say in this case that there is no substantial evidence to sustain the verdict, unless we undertake to substitute our evaluation of the evidence for that of the jury. The plaintiff testified specifically as to the occurrence of this incident. Her testimony stands alone, and the bus driver has no memory of it. However, the driver admits that on three or four occasions passengers had had packages caught in the closing door; it was within the jury's province to believe or disbelieve the appellee

in her statement that her ankle was caught in the closing door of the bus. Further, since the jury obviously believed that the incident happened, the premature closing of the door by the driver before this passenger was able to get off the bus would constitute evidence of negligence sufficient to sustain the jury's verdict.

In this Court the only possible merit in appellant's first contention would be the impossibility of the fact that the admitted injuries suffered by appellee resulted from the pressure or blow from the hollow rubber edges of the bus door. Whatever may be our feeling about the likelihood or probability of these injuries resulting from the particular incident, there is no ground for reversal of the jury's verdict unless it be under the doctrine of physical impossibility discussed by this Court in Alexander v. Cowart, 1954, 58 N.M. 395, 271 P.2d 1005; Ortega v. Koury, 1951, 55 N.M. 142, 227 P.2d 941; Crocker v. Johnston, 1939, 43 N.M. 469, 95 P.2d 214; Larsen v. Bliss, 1939, 43 N.M. 265, 91 P.2d 811. While the physical facts in this case make the particular injury an improbable consequence of the "impact," we do not believe that they are so inherently improbable as to constitute the evidence not substantial under the doctrine of the foregoing cases. In the language of Crocker v. Johnston, supra [43 N.M. 469, 95 P.2d 217], the physical facts asserted by appellee and accepted by the jury are not "utterly at variance with well established and universally recognized physical laws." The effect of the momentary pinning of an ankle or wrist or other part of the body could vary greatly depending upon the reaction of the person caught; remaining motionless, a person might well suffer no injury; on the other hand, a startled attempt to escape could result in a severe wrench or sprain. Appellants chose to have members of this jury submit themselves to an experiment. Members of the jury did so and reached their conclusion. We are not in a position to reverse that conclusion. On this point, appellants' contention is denied and likewise appellants' motion to furnish a bus to this Court for experiment is denied.

Appellants' Point II raises a serious question. Appellee offered in evidence a mortality table showing appellee's life expectancy to be 18.48 years. Appellants objected on the ground that there was no evidence of permanent injury or permanent disability and that the table was wholly immaterial. The objection was overruled, the mortality table admitted in evidence, and the record shows that it was argued to the jury.

The medical testimony with regard to the permanency of the injury is brief. Appellants' medical witness testified:

"Q. In your opinion, how long would it be before this ankle or foot completely heals, is completely recov-

ered? A. That is difficult to pin down exactly. You can say about, roughly, six months to a year."

Appellee's medical witness testified:

"Q. When may recovery be anticipated in a case such as Mrs. Dominguez's? A. We have very little control of this complication, therefore, it is rather difficult to give an estimation of the length of her disability. I think she will continue to improve. How much and how far along this improvement is going to go is impossible to state."

The foregoing substantially covers all of the testimony directly related to this question.

This Court in two cases has considered closely related questions. In Thayer v. Denver & R. G. R. Co., 1916, 21 N.M. 330 at page 366, 154 P. 691 at page 702, appellee was permitted to read the mortality tables to the jury over appellant's objection that there was no proof that appellee's injuries were permanent. The Court there asserted that the evidence in that case need not be evaluated since the Court was directing a new trial in any event; the Court's concluding statement on this question reads: "And, if there is substantial evidence tending to show that the injuries are permanent, such tables are properly received in evidence." In Turrietta v. Wyche, 1949, 54 N.M. 5, 212 P.2d 1041, 15 A.L.R.2d 407, the Court held that the annuity tables were admissible in evidence in that case. The admissibility of the mortality tables was not questioned and, in any event, the injury there involved was of necessity permanent, since the plaintiff lost his arm. These cases indicate the admissibility in evidence of the life expectancy tables in a proper case, but indicate that there must be a showing of permanent injury to constitute a proper case.

In our judgment, the rationale suggested by these cases is proper and is supported by good authority. The Supreme Court of Michigan in Gardner v. Boyer's Estate, 1937, 282 Mich. 552, 276 N.W. 552, 553, had before it the propriety of the trial court's action in instructing a jury to disregard the mortality tables which had been introduced into evidence. The medical evidence in that case closely parallels that in the instant case. A small portion of it is as follows:

" 'Q. The condition that is there now is permanent until some certain time in the future, is that right? A. It will extend in the future, yes, sir.

" 'Q. You can't tell how long? A. No, sir.

" 'Q. It may be for a period of years, or it may be forever, is that right? A. It may be, yes. * * *

* * * * * *

" 'Q. In other words, it will extend in the future, but for just how long, you can't say? A. That is right.

" 'Q. It may disappear as time goes on, and it may not? A. Yes, sir.' "

The Michigan Court concluded as follows:

"The testimony did not tend to show such probability of future injury as to amount to a reasonable certainty that the consequences suggested will result from the original injury. The trial judge, therefore, was not in error either in charging the jury to disregard the mortality tables or in finding there was no proof of permanent injury."

A closer case to that before us is Snyder v. Great Northern Ry. Co., 1915, 88 Wash. 49, 152 P. 703, 706, in which the Court permitted the introduction of mortality tables to show the expectancy of life of the plaintiff. The error which is urged here was urged in that case, namely, that it was not shown that plaintiff was permanently injured. The Court concluded:

"None of the doctors testified, so far as the record shows, that the natural and reasonably probable result of the injury which the plaintiff received at the time of the accident would be a permanent injury. The court therefore erred in receiving these mortality tables in evidence."

There are two other cases which discuss these tables, and their reasoning strongly sustains the position which this Court now takes as to their admissibility in evidence and the effect thereof. McCaffrey v. Schwartz, 1926, 285 Pa. 561, 132 A. 810; Kerrigan v. Pennsylvania R. Co., 1899, 194 Pa. 98, 44 A. 1069.

■ The testimony in the instant case, heretofore quoted, is not substantial evidence of permanent injury and, for that reason, it was error on the part of the trial court to permit the introduction of the life expectancy tables over the objection of appellants. We find no merit in the contention of appellee that this error was not properly preserved for review. The only remaining question is whether or not such error was sufficiently prejudicial to justify a reversal of the judgment of the trial court.

The record shows that appellee's life expectancy of 18 years was incorporated in and made a part of appellee's appeal to the jury. The original suit was for $7,500, the jury's verdict for $5,000. The medical expenses in this case were low and, as heretofore stated, the third point in appellants' brief was to the effect that the verdict was excessive.

While it is unnecessary to pass upon appellants' third point, as an isolated question, we would be unwilling to say that this verdict was excessive. However, un-

der all of the circumstances, we do believe that the erroneous admission into evidence of the life expectancy table, together with its use by appellee in arguing to the jury, in the absence of some substantial proof of permanent injuries, was prejudicial. See Griego v. Conwell, 1950, 54 N.M. 287, 222 P.2d 606, and 3 Am.Jur., §§ 1028–1032, pp. 580–590 (Appeal and Error).

The judgment of the trial court is reversed and the cause remanded for a new trial. It Is So Ordered.

McGHEE, C. J., and SADLER, COMPTON and LUJAN, JJ., concur.