**Jack WILSON, Appellant,**

v.

**INTERIOR AIRWAYS, INC., Appellee.**

**INTERIOR AIRWAYS, INC., Appellant,**

v.

**Jack WILSON, Appellee.**

Nos. 261, 263.

Supreme Court of Alaska.

July 15, 1963.

Rehearing Denied Sept. 7, 1963.

Karl L. Walter, Jr., and Robert A. Parrish, Fairbanks, for Jack Wilson.

Charles J. Clasby, Collins & Clasby, Fairbanks, for Interior Airways, Inc.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Jack Wilson was a passenger in an airplane which crashed on September 17, 1959. He brought this personal injury action against Interior Airways, Inc., the owner

of the plane. A jury returned a verdict in favor of Wilson for $60,000, but the court entered judgment for only $50,000—the amount prayed for in the complaint. Both parties have appealed.

## I. Interior's Appeal

Interior argues three points: that Wilson was not the real party in interest and therefore not entitled to maintain this action; that it was prejudicial error for the court to give an instruction on Wilson's life expectancy; and that the verdict was excessive.

*Real Party in Interest.*

Wilson was in the course of his employment when he was injured in the airplane wreck. After this action had been commenced, he was awarded compensation under the Alaska Workmen's Compensation Act. That Act provides that when an employee accepts payment under an award, the acceptance operates as an assignment to the employer of all of the employee's rights to recover damages against the person liable for the employee's injuries.[1] Contending that Wilson had accepted payment of compensation under an award made by the Alaska Workmen's Compensation Board, Interior argues that the statutory assignment in the compensation act, coupled with Civ.R. 17(a) providing that all actions shall be prosecuted in the name of the real party in interest, operated to prevent Wilson from maintaining this action.

The action was commenced on October 29, 1960. The workmen's compensation award was made on May 3, 1961. Interior indicated its awareness that workmen's compensation was involved when it stated in its pre-trial memorandum filed June 30, 1961: "We understand that plaintiff has received Workmen's Compensation benefits. If so his claim is in part subject to subrogation." The real party in interest issue was not raised at that time.

Trial began on February 5, 1962. While cross-examining Wilson, Interior's counsel attempted to show that a compensation award had been made and that Wilson had accepted benefits under it. Wilson's counsel stipulated that this was the case. There was no clear statement as to why the subject of workmen's compensation had been brought into the case. Interior's counsel made reference to the fact that when benefits were taken under an award, there was a statutory assignment of the employee's claim to his employer. But he went on to say that "I don't at this time ask the court for any ruling in that regard", and later stated that he was not "looking for this case as the vehicle to settle" the question.

Interior first raised the real party in interest issue in a motion to dismiss filed after the trial had been completed and the jury's verdict had been returned. It was too late then to challenge Wilson's right to maintain the action. Interior had notice before the trial had started that there had been a workmen's compensation award; and before the trial was over, knew that Wilson had accepted compensation under the award. With that knowledge it was incumbent upon Interior, if it had wished to challenge Wilson's right to maintain the action, to have moved to amend its answer to assert the defense of lack of capacity to sue by specific negative averment, as required by Civ.R. 9(a). By failing to do this, the defense was waived.[2] The trial court was correct in denying Interior's post-verdict motion to dismiss the action.

*Instruction on Life Expectancy.*

Interior claims as error the court's instruction that the life expectancy of Wilson, according to the American Experience Table of Mortality, was evidence to be considered by the jury. According to this table Wilson, who at the time of trial was 34 years old, had a life expectancy of 32.5 years. Interior's counsel objected to the instruction on the ground that there was no evidence of permanent disability. The trial judge overruled the objection on the

1. SLA 1959, ch. 193, § 30(2) [AS 23.30.-015(b)].

2. Smith v. Sellar, Opinion No. 88, 371 P. 2d 809 (Alaska 1962).

basis of his recollection of one doctor's testimony that not all cases like Wilson's end up with a complete cure.

Wilson claims that the permanent damage which he suffered consists of a traumatic neurosis which followed a cervical sprain sustained in the airplane accident. The testimony of the physicians who were called by Wilson does not support his claim of permanent disability. Dr. Haggland was asked whether the traumatic neurosis might or could or will be permanent. He answered "no", stating that he had the feeling that under proper psychoanalytical care and therapy, Wilson would respond very nicely and would come back restored to normal. Dr. Marrow testified that Wilson had had personality difficulty for years, that his present nervous problem was intensified following the accident, that this problem is not permanent, and that with psychological guidance and assistance he could be rehabilitated within a year or less.

The only other medical testimony was that of Dr. Tatum, a witness called by Interior. In response to a question as to how he would get Wilson back to work, he said:

> "This would be a very difficult thing. If he—if he—uh sincerely desired uh to have psychiatric help, then a great deal could be accomplished, uh—and probably over a long period of time, there couldn't be any definite time set, how long this would take, and uh—if he did not desire help, psychiatric help, then nothing could possibly be done, it would have to be his sincere effort and with a psychiatrist, to overcome that."

And later when asked whether persons with the same type of personality defect as Wilson's always get well even after treatment, the doctor answered "not always".

What Dr. Tatum said is not evidence of permanent disability, as Wilson contends it is. Throughout his testimony Dr. Tatum made it clear that Wilson's personality defect, which was related to his inability to hold a job, cou'd be remedied provided that Wilson was willing to go to work and at the same time seek psychiatric help. In short, what Dr. Tatum was saying was that Wilson's condition would be permanent only if Wilson were unwilling to help himself.

■ Since there was no evidence of permanent disability contained in the testimony of any of the three doctors, the instruction on Wilson's life expectancy was not warranted.[3] The remaining question is whether the error in giving that instruction calls for reversal and a new trial. Considering the proof of injuries and damages, we cannot say that in returning such a substantial verdict the jury may not have been largely influenced by the erroneous instruction on life expectancy. For this reason we believe the error was not harmless and that a new trial should be ordered. In view of our holding, it is unnecessary to dwell upon Interior's third point—the excessiveness of the verdict—as an isolated question.

## II. Wilson's Appeal

Since a new trial is required, it is not essential that we pass upon the issue raised by Wilson on his appeal. But we nevertheless rule upon the point for the general benefit of the bench and bar.

Wilson's complaint asked for $50,000 compensatory damages. The jury returned a verdict for $60,000. The court entered judgment for the lesser amount, after having denied motions made by Wilson to amend his complaint to increase the amount of damages demanded in the prayer for relief.

■ Under Civ.R. 54(c) the court was required to enter judgment for the relief to which Wilson was entitled, rather than limiting the judgment to the amount of

---

3. See Dominguez v. Albuquerque Bus Co., 58 N.M. 562, 273 P.2d 756, 50 A.L.R.2d 414 (1954) (error to admit introduction of life expectancy tables in absence of substantial evidence of permanent injury); Annot. 50 A.L.R.2d 419 (1956).

damages demanded in the complaint.[4] The jury determined that Wilson was entitled to $60,000. It was error for the court to enter judgment for a lesser amount.

While ruling on this matter, the trial judge stated that it was conventional practice to instruct the jury that they cannot award more than the maximum amount prayed for in the complaint. Although the judge did not so instruct the jury in this case, we consider it appropriate to express our disapproval of that kind of instruction since it is clearly inconsistent with Civ.R. 54(c).

The judgment is reversed and the case remanded for a new trial.

Rehearing denied; AREND, J., dissenting.

4. Miller v. Johnson, Opinion No. 70, 370 P.2d 171, 172 (Alaska 1962); Rhodes v. Rhodes, Opinion No. 83, 370 P.2d 902, 904 (Alaska 1962); Couto v. United Fruit Co., 203 F.2d 456, 457 (2d Cir. 1953).