RONNING, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 20—October 14, 1924.*

*Homicide: Overturning of automobile: Death of passenger: Violation of speed statute: Evidence: Judicial notice: Effect of "blow-out:" Marks in road: Sufficiency: Verdict resting in conjecture.*

1. In a prosecution for manslaughter, based on the negligent operation of an automobile, testimony as to the speed of the car a mile or more from the place of the accident, and testimony that the car was then going "real fast," is *held* incompetent. p. 657.
2. Courts will take judicial notice that a blow-out of the tire of a running car impairs the ability of the operator to manage the car. p. 658.
3. It was proper to show the track the machine made while it swerved or slid, and the distance of such swerving or sliding. p. 658.
4. Evidence which requires the jury to engage in speculation as to why the automobile left the road and went into the ditch is insufficient to sustain a conviction based on a violation of the speed statute. p. 660.

CROWNHART, J., dissents.

ERROR to review a judgment of the circuit court for Barron county: W. R. FOLEY, Circuit Judge. *Reversed.*

The writ is prosecuted to review a judgment, conviction, and sentence of the plaintiff in error for manslaughter in the fourth degree.

The cause was submitted for the plaintiff in error on the brief of *M. S. Hines* of Rice Lake and *Bundy, Beach & Holland* of Eau Claire, and for the defendant in error on that of the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *C. E. Soderberg,* district attorney of Barron county.

DOERFLER, J. The plaintiff in error will hereinafter be referred to as the defendant. The information contained two counts: first, that the defendant did on the 28th day of

July, 1923, at said county of Barron, feloniously kill and slay one Nels Ronning; and the second count charges the unlawful operation of an automobile upon and along a certain highway at a rate of speed exceeding thirty miles per hour. The cause was submitted to the jury and a verdict of guilty was returned upon both counts, although the court gave an instruction to the jury to consider the second count only in case they found the defendant not guilty on the first count. The court thereupon adjudged the defendant guilty on the first count and pronounced sentence.

The statute under which the defendant was prosecuted on the first count, for manslaughter, is sec. 4363, which reads as follows: .

"Every other killing of a human being by the act, procurement or culpable negligence of another, where such killing is not justifiable or excusable, or is not declared in this chapter murder or manslaughter of some other degree, shall be deemed manslaughter in the fourth degree."

The sole theory of the State upon which the defendant was prosecuted is based upon an alleged violation of the statute which limits the speed of an automobile on highways outside of cities and villages to thirty miles an hour. On the part of the State it is claimed that the evidence clearly establishes a violation of such speed statute, while on the part of the defendant it is strenuously contended that there was no competent evidence submitted to the jury upon which a violation of such speed statute could be based, and that the evidence is nothing more than speculative. We will therefore briefly review the evidence pertaining to the subject of speed.

Defendant's car had been purchased by him, new, three months prior to the 28th day of July, 1923, the date of the accident; it had a wheel base of 136 inches; was equipped with Goodrich diamond tread non-skid tires; was 200 inches in length, and weighed about 4,000 pounds. On the day

of the accident the defendant was driving this automobile
from Rice Lake, Wisconsin, to Cameron, a distance of
about seven miles, and had with him in his machine, as
passengers, Nels Ronning, his brother, and one James Car-
ter. The object of such trip was to take these passengers
to Cameron to enable them to board a 6:35 a. m. Soo train
for Minneapolis to attend to some business for the defend-
ant. The trip was undertaken at about quarter to six in
the morning. The parties proceeded along Main street and
South Main street in Rice Lake, and after making several
turns drove onto highway No. 11, a north-and-south high-
way, on their way to Cameron.

William Hoffman, a witness for the State, an employee
of the postal department, while proceeding to his place of
business saw the defendant driving along Main street in the
city of Rice Lake and saw him turn at the intersection of
Main and Allen streets to make a detour. Hoffman at that
time was about one mile from the place of the accident.
He had been the owner of automobiles for four and a half
years and had had considerable experience in driving ma-
chines; had also had considerable experience in riding in
cars; also had observed the speed indicated from speedome-
ters of cars. He testified that at the time the defendant
passed him he was operating his car at the rate of forty
miles per hour. He also testified that the cut-out was open
and that the car made considerable noise, which sounded
like the propeller of an aeroplane.

Helen Strand, a witness for the State, an employee at a
hotel at Rice Lake, observed the car at a distance from the
accident somewhat greater than one mile. She was unable
to estimate the speed in miles per hour. Her attention was
also called to the noise made by the car as it was passing,
and on the subject of speed she testified that the car was
going "real fast."

Paul Krippner, a witness for the State, eighteen years of

age, who lived on a farm located east of highway 11 and just outside of the city limits, a distance of about three eighths of a mile from the place of the accident, saw the defendant with his passengers driving past his home, and he testified that the car was running at the rate of about seventy miles per hour. The witness observed the automobile through a window of his house, and the house was located a distance of about fifty feet east of the road. The highway is a gravel highway and was in good condition. He also testified that he had experience in observing the speed of passing automobiles and that he had often ridden in cars at various rates of speed, and that he was capable of approximating the speed of a passing automobile. He also testified that he heard the noise of the cut-out; that it sounded like the propeller of an aeroplane, and that his attention was first called to the car by such noise; that he saw the car a distance of about 250 feet, both before and after the machine passed his home.

Harold Lehman, sixteen years of age, who lived on his father's farm in a house located about six rods west from highway 11 and a few rods from the place of the accident, saw the automobile shortly before 6 o'clock a. m. and heard the noise of the machine. He saw the car swerve across the road towards the southwest at an angle of about forty-five degrees and then go into the ditch. He testified that when he saw the car it was going fast, but that he could not estimate the speed; that the road at the place of the accident was about twenty-eight or thirty feet in width; that there had been no rain the night before, and that the road was not wet or slippery.

Dorothy Lehman, a sister of Harold, saw the car dash by a distance of about three or four rods, from the window of her home, and she testified that the car was going "very fast," but that she did not see it for a sufficient distance to enable her to judge the speed.

Paul Lehman, the father of Harold and Dorothy, testified

that he had made actual measurements upon the highway, and that the distance between the place where the car left the east shoulder of the highway to where it tipped in the ditch was seventy feet; that the marks of the car skidding on the highway were still then observable; that the distance from where the car first landed in the ditch to where it stopped sliding on its side was twenty-three feet, and that where the car stopped sliding the evidence still existed of the soil having been turned up and scraped during the time the car slid.

It is argued by counsel for the State that the evidence thus referred to was competent and credible and sufficient to warrant a jury in finding that the defendant, at and prior to the accident, was traveling at a rate of speed in excess of thirty miles an hour. The undisputed evidence shows that immediately after the accident an examination was made of the place of the accident and of the car, and that it was ascertained that Nels Ronning was found beneath the car, dead, as a result of a fractured skull, and that Carter was found in an unconscious condition from injuries sustained in the accident, from the effect of which he died on the same day. The top of the car was practically torn off, and the fenders on the right-hand side were flattened, the radiator was shoved back onto the engine, the wind-shield was broken, and there was a cut in the inner tube of the rear right tire, and the tire was flat.

The defendant, who was the only other witness to the accident, testified that shortly before reaching the place of the accident he was operating the car at a rate of between twenty-eight and thirty miles an hour; that he traveled in the middle of the road until he observed the blow-out; that his car then swerved to the left, to the edge of the road, and there traveled a distance of about two rods, so that the east-and-west wheels straddled the east shoulder; that he immediately attempted to right the car by turning the steering wheel towards the west, and that he at the same time

applied the brakes, and that the car momentarily righted and then swerved over from the east shoulder to the west ditch on an angle of about forty-five degrees, and when the front west wheel passed over into the ditch the car tipped over onto its side and then slid several feet; that he used every effort to control the car, but that the same was beyond his power of control; that when a rear tire blows out so as to permit the air to escape and the tire to become flattened it is very difficult to steer the car; that it is almost impossible to determine what effect the steering of the car and the application of the brakes under those circumstances will have upon the action of the car. The expert testimony of the defendant was corroborated by several other experts. The principal contention on the part of the defendant is, as above stated, that there was no competent evidence in the case to establish, under the law applicable in criminal cases, that he was violating the speed statute at or immediately prior to the happening of the accident.

Hoffman was a competent witness as to approximate speed, but when he observed the car he was a distance of about a mile from the place of the accident, and he testified that according to his estimate the car was going at the rate of about forty miles per hour. This evidence has little or no probative force. When the automobile left Main street it passed onto a stretch of uneven and rough roads, and it appears from the evidence that it would be nigh impossible to pass over such roads at a high rate of speed. It is a well-known fact that an automobile in good condition can very readily and quickly be regulated as to speed.

Huddy on Automobiles (6th ed.), sec. 929, says:

"The speed of a motor vehicle immediately before or after an accident may be received as evidence of its speed at the time of the occurrence." (Citing *Wigginton's Adm'r v. Rickert,* 186 Ky. 650, 217 S. W. 933; *La Duke v. Dexter* (Mo. App.) 202 S. W. 254; *State v. Welford,* 29 R. I. 450, 72 Atl. 396.) "While the fact that the automobile that in-

jured a plaintiff was running twenty-five miles an hour a block and a half from the crossing does not generate any presumption of law, even *prima facie,* that it entered upon or passed over the crossing at a similar rate of speed, nevertheless it is clearly a fact for the jury to consider, as affording an inference of fact with respect to its probable speed and control when it very shortly thereafter reached and passed over the crossing. But speed at a considerable distance from the point at issue is no criterion, and is not generally received."

In the case of *People v. Barnes,* 182 Mich. 179, 148 N. W. 400, it was held that evidence of speed from a distance of a mile or more from the place of the accident is of no value.

The witness Strand testified that she was unable to estimate the rate of speed per mile, but that the car was going "real fast." If Hoffman was a distance of about a mile from the place of the accident, then according to the testimony, Miss Strand, who was back of Hoffman, was over a mile away. Her testimony is of no probative force. The opinion of a witness who testifies as to a car going "fast," or "real fast," or "slow," or "real slow" can only be persuasive when a comparison is made with certain other vehicles whose speed is known, or where certain facts and circumstances are shown from which an approximate estimate can be made as to what a witness really means by such an expression. "Fast" may have a definite meaning in the mind of one witness and may have an entirely different meaning in the mind of another, and fifteen, twenty, or twenty-five miles an hour may create an impression with one person that a vehicle is traveling fast, while in the mind of another it would create the opposite impression. We therefore hold that the evidence of the witnesses Hoffman and Strand was not competent and that it possessed no probative force.

The witness Krippner was not in a very advantageous position at the time he made his estimate of an approximate

speed of seventy miles per hour. However, we are of the opinion that such evidence, under the authorities above cited, was admissible, but that the same did not create a *prima facie* case on the subject of speed or a presumption that the speed law was violated at or immediately prior to the accident, but that such testimony merely raised an inference of fact. The only other testimony of eye-witnesses called by the State is that of the witnesses Harold and Dorothy Lehman. Neither of these witnesses saw the automobile for a sufficient length of time to enable them to give an approximate estimate of the speed. Harold testified that when he saw the car during the swerve it was going "fast," and Dorothy testified that it was going "very fast." Such testimony, as has already been shown, has very little probative force. The undisputed evidence in the case shows that there was a blow-out of the rear tire, which occurred just at the time when the car began to swerve from the center of the road to the east shoulder. It is also undisputed, and a well known fact of which we can take judicial notice, that the occurrence of a blow-out as it existed in this case created a rather dangerous situation for the occupants of the machine on account of the effect which such a blow-out has upon the ability of the operator to so manage the car, with the aid of the steering apparatus and the brakes, as to keep it within the proper confines of the road. There is evidence that at or about the time the car began to swerve it was traveling in the center of the road; that it then swerved over to the east shoulder, straddling the same for a distance of about two rods, then swerved over on an angle of about forty-five degrees, a distance of about seventy feet, until it reached the ditch on the west side, and that it then toppled over onto its side, and in that position slid about twenty-three feet. It was proper to show the track the machine made while it swerved or slid and the distance of such swerving and sliding. *Luethe v. Schmidt-Gaertner Co.* 170 Wis. 590, 176 N. W. 63. But there is no evidence in the

case that is persuasive to show that a car running from twenty-five ,to thirty miles an hour, with a blow-out as existed in the instant case, would not act and produce the same results as those which appear in the evidence. So that we conclude that the strongest evidence in the case is that of the witness Krippner, and that such evidence merely raises an inference of excessive speed. We hold that the testimony of the Lehman children is of little probative force, and that all of such evidence, together with the physical facts, are not sufficient to warrant the submission to the jury of the issue with respect to speed. The case was tried upon the theory that the defendant exceeded the statutory speed limit at and immediately prior to the happening of the accident, and that the accident proximately resulted from such excessive speed. We have also another very vital and important element in the case, which appears from the blow-out and the action of the car thereafter while the defendant was attempting to so control it and keep it within the confines of the highway proper. The situation in this case is not unlike that which is shown in the case of *Klein v. Beeten,* 169 Wis. 385, 172 N. W. 736. In that case it was held, as is shown by the syllabus:

"The court cannot take judicial notice that a blow-out of the front tire of an automobile running fifteen miles an hour could not cause the car to run into a ditch alongside the road."

And from the opinion the following appears:

"It is familiar knowledge that the blow-out of the front tire of an automobile is a dangerous occurrence, the degree of danger, of course, depending upon the rate of speed, and, we apprehend, somewhat upon the character of the car."

We therefore hold that the question of whether defendant violated the statute with respect to speed is shrouded in impenetrable mystery, and that it is impossible for a juror, under the evidence in the case, to come to a logical conclusion that either the speed limit was exceeded or that

the speed rather than the blow-out resulted in the accident. Under the circumstances a jury could only engage in speculation, and such a verdict cannot be sustained in a criminal case.

*By the Court.*—The judgment of the lower court is reversed, with directions to discharge the defendant.

CROWNHART, J. (*dissenting*).    I cannot concur in the decision of the court on the question of speed of the defendant's automobile.   It seems to me there was abundance of competent evidence to take that question to the jury. The defendant had traveled on the highway outside the city limits three quarters of a mile to the point of the accident. His testimony is conclusive that that distance was covered at approximately the same uniform rate of speed.    The testimony of the witness Krippner was that three eighths of a mile north of the place of accident defendant was driving at the rate of seventy miles per hour.   A test of speed of the automobile, introduced in evidence by defendant, showed it capable of making sixty-five and one-half miles per hour. Defendant testified that prior to the day of the accident he had made sixty miles per hour without reaching the limit of the machine's capacity for speed.   Now, then, we have the machine capable of making more than sixty-five miles per hour; we have evidence of speed three eighths of a mile from the accident of approximately seventy miles per hour; we have evidence that the machine continued at the same rate of speed to the place of accident; and, besides, we have other very persuasive evidence that the machine was driven at a very rapid rate of speed for the whole distance out of Rice Lake to the point of accident.   Then we have additional and satisfactory evidence of great speed.    Defendant testified that immediately after the tire blew out he put on his brakes hard.    The brakes were in fine order.    They locked the wheels.    But the car went zig-zagging five or six rods, tipped on its side, and then plowed along the level highway

twenty-two feet further, smashing the radiator back on the engine, stripping off the fenders, and killing two men in the back seat.

If we have not sufficient evidence to. go to the jury on the question of speed in this case, then I think there will be few cases of prosecution under the statute.

I respectfully dissent.