259 S.W.2d 94 (1953)
HARTER
v.
KING.
No. 7148.
Springfield Court of Appeals. Missouri.
June 2, 1953.
Roberts & Roberts, Farmington, for appellant.
J. B. Schnapp, Fredericktown, Dearing & Matthes, Will B. Dearing, W. H. S. O'Brien, Hillsboro, for respondent.
VANDEVENTER, Presiding Judge.
This is an action for damages for injuries to person and property caused by an automobile collision. From a jury verdict for defendant, plaintiff appeals.
The petition alleges that on the 28th day of December, 1951, while plaintiff was driving in an easterly direction over a Farm-to-Market road between Mill Creek and Cedar Bottoms in Madison County and at a point two miles west of Mill Creek, his truck was run into by a truck operated and driven by defendant in an easterly direction over the same road. He alleged that the defendant was negligent in (A) failing to keep a vigilant lookout for vehicles and traffic, (B) in negligently and carelessly, *95 without warning, turning his truck to the left, thereby running into plaintiff's truck, and (C) failing to have on his Ford truck a rear vision mirror. It was then alleged that plaintiff was injured and his truck damaged and judgment was prayed in the first count for $2,500 for injuries to his person and in the second count for $1,950 for damages to his truck. The answer was a general denial, allegations of contributory negligence and a counterclaim for $100 for injury to defendant's truck, the grounds of negligence being that plaintiff was driving at a high rate of speed "under the conditions then and there existing" and while attempting to pass defendant, permitted his vehicle to "run into and collide with the left front fender and running board of defendant's truck."
Plaintiff's evidence showed that he was traveling with his truck empty eastwardly on the highway to get a load of gravel at Marquand; that he was going at about 35 or 40 miles an hour, that he saw the defendant, with his truck empty, going in the same direction several hundred feet ahead of him and that when he got up close enough, he sounded his horn seven or eight times, and pulled to the left side of the road in order to pass. That when he was about even with defendant, the defendant suddenly and without giving a signal or other warning, turned his truck to the left and into plaintiff's truck, striking it between the cab and rear wheels. Plaintiff's truck was turned over and damaged considerably as was the plaintiff.
The defendant's evidence showed that he was traveling easterly on the Farm-to-Market road on the right-hand side of the road at a speed of 10 or 15 miles per hour, that he did not turn into plaintiff's truck and that plaintiff's truck, going "at high speed", went around him and struck the left front fender and bumper of defendant's truck; that defendant's truck was never on the left side of the highway, which was the north side, and that he never heard plaintiff sound his horn.
Appellant raises two questions under his points and authorities. He alleges (a) that it was error to permit the cross-examination of plaintiff as to his speed and his failure to stop at a stop sign four or five miles away from the place of the collision, and (b) permitting defendant to offer in evidence testimony of statements made by a witness relative to such occurrence out of the presence and hearing of the plaintiff.
One of plaintiff's witnesses was Paul Wengler, who was also a gravel hauler on this highway project. Wengler was traveling with his truck loaded in a westerly direction and came up from the east a few minutes after the collision. He testified that he heard the defendant say to the plaintiff, "I will take care of your truck and fix it up as good as it was." On cross-examination, Wengler was asked as to the speed he was going and over plaintiff's objection was permitted to state "not over 40 miles an hour" because his truck wouldn't run that fast loaded. He was then asked if he didn't have a conversation the day of the wreck with one George Jordan, in which he said, "George, did you see that guy I was racing with a while ago?" And witness said he did not. He further denied that Jordan at that time told him that he (Jordan) and his wife were scared the way he, witness Wengler, and plaintiff were driving, at such a speed, that they would have a wreck. He also denied racing with the plaintiff. He testified that he merely told George Jordan about the wreck. He further testified that he didn't drive by the side of plaintiff that day. He admitted traveling the road the same direction as plaintiff but was never in sight of him except when he met him.
The collision between plaintiff's and defendant's trucks happened between 9:30 and 10:00 o'clock in the morning. Over the objection of plaintiff, defendant offered testimony that about 7:30 or 8:00 o'clock that morning, four or five miles away, plaintiff had been driving 35 or 40 miles an hour and had failed to observe a stop sign. He was said to have been driving side by side with witness Wengler and that both of them ran the stop sign and were traveling 35 or 40 miles per hour. Also that at another time about 1½ miles from the collision, he was driving about 60 miles per hour on the highway. This testimony was immaterial and irrelevant and we think under the facts in this case, the plaintiff was certainly injured by its admission. McComb *96 v. Vaughn, 358 Mo. 951, 218 S.W.2d 548; Stelmach v. Saul, Mo.App., 51 S.W.2d 886; Wood v. Claussen, Mo.App., 207 S.W.2d 802; Sisk v. Industrial Track Const. Co., Mo.Sup., 295 S.W. 751; Gough v. Harrington, 163 Miss. 393, 141 So. 280, 281; People v. Campbell, 237 Mich. 424, 212 N.W. 97; Ronning v. State, 184 Wis. 651, 200 N.W. 394; Douglass v. State, 22 Ala.App. 255, 114 So. 479. It did not prove or tend to prove whether plaintiff collided with defendant or defendant turned into plaintiff miles away two hours later.
It is argued by respondent that this was admissible to impeach plaintiff's testimony that he had a governor on his truck that held the speed down to 48 miles per hour, but there is no evidence that he exceeded 48 miles per hour at or near the place the trucks collided.
But that is not all, defendant was permitted to impeach Wengler by offering evidence that after the wreck, he came to a filling station operated by George Jordan four or five miles from the scene of the wreck and made certain statements not in the presence of defendant. The transcript shows the following in the testimony of witness Jordan:
"Q. Now, did you have a conversation with Paul Wengler, at your filling station, when he stopped there to buy gasI will ask if he didn't make the following statement to you, `Did you see that guy I was racing with while ago?' Was that statement made to you? A. Yes, sir.
"Q. Did you say, `Yes'? A. I said, `Yes'. I did.
"Q. Did you also say to him, `All of us seen you and we were kind of scared'? A. Yes, sir.
"Q. Then did he say this, `Well, he (meaning plaintiff) just tore his truck all to hell over there'? Is that the language he used? A. Yes, sir."
Mrs. Opal Jordan, wife of George Jordan, was permitted to testify to the same state of facts.
It is argued by respondent that this testimony was admissible to impeach statements of witness Wengler that were brought out on cross-examination. Assuming that it was proper cross-examination, which we do not decide, it was a collateral matter whether two hours before the collision at a point five miles removed from it, plaintiff failed to stop at a stop sign or raced his car with the witness at 35 or 40 miles an hour. Respondent was bound by the answer of the witness elicited on cross-examination. 58 Am.Jur., Witnesses, Sec. 784; 70 Corpus Juris, Witnesses, Sec. 1010(3); Schroeder v. Rawlings, 344 Mo. 630, 127 S.W.2d 678. See many cases cited Missouri Digest, Witnesses, 383. This is also the rule in the Federal Courts. See Gideon v. United States, 8 Cir., 52 F.2d 427.
Defendant should not have been permitted to introduce this highly inflammatory evidence under the pretext of impeaching Mr. Wengler.
Reversed and remanded.
BLAIR and McDOWELL, JJ., concur.