BLASI, by Guardian *ad litem,* Plaintiff, v. DRAFZ and another, Defendants. [Two appeals.]

*November 2—November 29, 1960.*

For the plaintiff there were briefs by *Phillips & Richards* of Kenosha, and oral argument by *David L. Phillips* and *Charles J. Richards*.

For the defendants the cause was submitted on the brief of *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha.

MARTIN, C. J.   On motions after verdict appellant moved to change the answers as to his negligence and enter judgment for the plaintiffs on the verdict as so amended. The trial court denied the motion. Appellant's position on this appeal is that the court was obliged as a matter of law to apply the emergency doctrine and absolve him of negligence.

The accident occurred at about 1 a. m., June 21, 1958, on Sheridan road in the city of Kenosha. Sheridan road, for some distance in both directions from the point of collision, is a three-lane, concrete highway, each lane being approximately 10 feet wide. The pavement was dry, the weather clear.

Just prior to the accident three cars were traveling south on Sheridan road. One was the car driven by appellant Robert Blasi, with Charles P. Stone, Eugene Mecozzi, and two others as passengers. Ahead of the Blasi car was an automobile owned by one William Toutant, in which Harold Grellinger was a passenger. Behind the Blasi car was the automobile driven by respondent Robert Drafz. According to Stone's testimony, Drafz passed the Blasi car, cut in front of it and slammed on his brakes. Then the Drafz car began to "fishtail," swerving back and forth across the west lane with portions of the car invading the center lane; its brake lights were flashing. Blasi then pulled into the center lane and the cars collided, the right front fender of the Blasi automobile coming in contact with the left front fender of the Drafz automobile. Almost immediately thereafter the Blasi car collided head on with the northbound Barchus car which was also in the center lane. The Mecozzi testimony was generally to the same effect.

There were some variations in the testimony of other witnesses as to how the accident happened, but it is apparent from the verdict of the jury that the Stone and Mecozzi testimony was the version which it accepted. Appellant contends that the passing, braking, and "fishtailing" of the Drafz car created an emergency to which Blasi, with less than six or seven seconds to act, reacted by pulling into the center lane. The evidence shows that Blasi's reaction to Drafz's cutting sharply in front of him was to brake his car. The Drafz car did not begin to "fishtail" until it was completely in the west lane and twenty feet ahead of Blasi. Yet the collision between these two vehicles occurred when Blasi drove into the center lane and brought his car abreast of the Drafz car, obviously in an attempt to pass.

The jury could well believe that any emergency created by Drafz's passing and cutting in was past before Blasi pulled

into the center lane; that he was already safely behind Drafz when the "fishtailing" began.

No doubt the erratic movement of the Drafz car presented a situation which Blasi desired to put behind him, but in attempting to do so it was his duty to pass only after ascertaining that he could do so in safety. Sec. 346.13 (2), Stats. The sideswiping between the Blasi and Drafz vehicles occurred when they were abreast of one another, Blasi in the center lane. Immediately thereafter the Blasi and Barchus cars collided head on. Barchus testified he was in the center lane for some time, being in the act of passing two cars in the east lane. His lights were on. According to his testimony, the Blasi car came out into the center lane so quickly that he never saw it before the impact.

This court has held that before the emergency doctrine is available to a driver he must establish that the emergency developed so suddenly that there was no time for considered action and that no negligence of his own contributed to produce the emergency. *Deignan v. New Amsterdam Casualty Co.* (1958), 2 Wis. (2d) 480, 482, 87 N. W. (2d) 529. Appellant failed to establish these facts. Once Drafz had passed the Blasi car, Blasi had only to wait until he could determine that the center lane was free for passing. Visibility was good; the road was straight and level and there was nothing to obstruct his vision. The jury was entitled to believe that Blasi made no observation as to whether the center lane was clear before he attempted to pass the Drafz car, and that the speed at which he drove into the center lane and came abreast of the Drafz car was such that he did not see the Barchus car until it was too late to avoid colliding with it. This was a 25-miles-per-hour speed zone. The Toutant car, which was ahead of Drafz, was going between 30 and 40 miles per hour, according to the testimony of Grellinger. Stone testified Blasi was driving 35 miles an hour as Drafz passed him and Drafz passed at a speed of

about 55 miles per hour. If the cars had been operated at the legal speed, stopping would have been no problem for the drivers.

On its cross appeal respondents argue that appellant failed to prove a causal relationship between Drafz's negligence and Robert Blasi's injuries. The argument is based primarily on evidence that there was a distance of about a half mile between Drafz's passing of the Blasi car and the point of collision. This was in dispute, however, and it was for the jury to choose what evidence it would accept. The exact place where Drafz passed Blasi is not established, but Stone testified that six or seven seconds elapsed between the time Drafz passed and the time Blasi turned into the center lane. Thus, considering the speeds testified to, the jury could well infer that the distance referred to was probably not more than 350 feet. It was therefore entitled to conclude that the negligent management and control of Drafz set in motion the chain of events that followed and contributed to both of the ensuing collisions, that between Drafz and Blasi and that between Blasi and Barchus. Considering all the evidence in the record, this was a jury question.

On the verdict finding Drafz 90 per cent negligent and Blasi 10 per cent negligent, the trial court entered judgments against Drafz and his insurer in favor of (1) Robert Blasi, the appellant, (2) Ralph Blasi, his father, (3) Charles P. Stone, a minor, (4) Charles L. Stone, Sr., his father, and (5) John A. Barchus, providing for judgments in favor of Drafz and his insurance company against Robert Blasi for contribution as to the Stones and Barchus. In its order amending judgment the court made such rights of contribution junior and subject to rights of the attorney of record for the minor, Robert Blasi, in the amount of 33⅓ per cent of the face of the judgment in favor of Robert Blasi against Drafz and his insurer.

Sec. 256.48, Stats., provides:

"In all matters in which a guardian *ad litem* is appointed by the court, the guardian *ad litem* shall be an attorney admitted to practice in this state and shall be allowed reasonable compensation for his services, reasonable compensation to be such as is customarily charged by attorneys in this state for comparable services. Wherever the statutes do not specify who shall pay the fee of the guardian *ad litem,* the court shall order payment of his fees to be made by the party which the court determines should bear this cost."

This section makes the allowance of fees discretionary with the trial court. We see no abuse of discretion in basing the fees in this instance on the amount of Robert Blasi's judgment against Drafz and his insurance company. But such a basis is not a rule to be followed in all situations since, under a number of circumstances, its application would bring about absurd and inequitable results. In setting the amount of the guardian *ad litem* fees under the statute, it is incumbent upon the trial court to consider the amount of the minor's recovery, the proportion of his negligence, the amount of contribution, if any, the time spent and the effort and diligence exercised on the minor's behalf by the guardian *ad litem,* as well as the customary charges of attorneys in Wisconsin for comparable services. We are persuaded by the trial court's comments in its decision on this matter that it considered all these factors in this case. It may be observed, however, that had the court specified the amount of the fees allowed rather than a percentage of the minor's recovery from respondents, the question here presented would not have arisen.

Respondents contend the trial court erred in refusing to submit a question as to Robert Blasi's lookout. The ultimate fact to be determined regarding Blasi's negligence was position on the roadway. That question necessarily included the question of his lookout. The court instructed fully on lookout as to question 1 of the special verdict on Drafz's negligence. As to question 4 on Blasi's negligence, the court instructed

as to the statute providing that a driver may not pass on a three-lane highway except where the roadway is clearly visible and the center lane is clear of traffic within a safe distance, and stated:

"It is inherent in this provision of the law that since the motor vehicle operator must ascertain that the center lane is clear of traffic for a safe distance, he must use ordinary care to maintain a timely and efficient lookout. Therefore, what the court has said with regard to lookout in reference to question 1 also applies with equal force in your consideration of this question 4."

*By the Court.*—Order and judgment affirmed. Each party will pay his own costs.