LUBNER, Respondent, v. PEERLESS INSURANCE COMPANY, Appellant.

*February 8—March 5, 1963.*

For the appellant there was a brief by *Humke, Poole & Axel* of Sheboygan, and oral argument by *Paul L. Axel.*

For the respondent there was a brief by *Gerold & Huiras* of Port Washington, and oral argument by *Carl E. Gerold.*

CURRIE, J. Although several issues are raised by defendant, we will confine this opinion to the question of whether the trial court erred in denying defendant's motion for directed verdict. This makes it necessary to recount the evidence produced at the trial. In so doing, we shall follow the chronological sequence pursued in the conduct of the trial.

Plaintiff, the first witness, gave the following relevant testimony: Plaintiff and his wife resided on a farm in Washington county. On August 1, 1959, Mrs. Lubner, accompanied by an adult son, left on an eighteen to twenty-day trip to Alaska. Before leaving, she went to Dettmann, a neighbor who was an insurance agent, and purchased from

him the accident policy upon which suit was brought. This policy was written for twenty days effective August 1, 1959. Mrs. Lubner was fifty-two years of age, was five feet, six inches tall and weighed about 180 pounds. In 1951 she was treated for high blood pressure and was confined for two weeks in a Milwaukee hospital. Nevertheless, her health was good when she left on the trip.

While on the trip, apparently on her return from Alaska, she visited relatives at Norris, Montana. She died there on August 17, 1959. About 3 a. m. the next morning, plaintiff learned of her death. That same day, August 18th, plaintiff informed Dettmann that his wife had died of a heart attack based on information which "came from the people who were with her in Montana." Three people who were with Mrs. Lubner when she died were also present in the courtroom during the trial, viz., her sister, Mrs. Herbst, and Mrs. Herbst's daughters, Patricia and Luella.

After plaintiff had testified, the deposition of Charles E. Raper, a witness for plaintiff, was read into the record. Raper testified that he lives in Virginia City, Montana, and has been coroner of Madison county, Montana, for approximately nineteen years. He is also an undertaker. On the night of August 17, 1959, he was called to the Norris Hot Springs pool. Raper received the call at about 8:30 p. m., and arrived at the pool at about 9:30 p. m. He found Mrs. Lubner's body lying on a platform and a Harley Stephens attempting to revive her by applying artificial respiration. Upon examination Raper found the body had no pulse and concluded that Mrs. Lubner was dead. He took the body to his funeral home, removed a portion of the fourth rib, and inserted a drain tube into the chest cavity. Then he compressed the lung and drew out about a glassful of water through the tube. From this fact, he gave as his expert opinion that the cause of Mrs. Lubner's death was drowning. Raper had had no medical training, but during the long

period of his incumbency in office as coroner, he had seen from one to three bodies per year of persons who had died from drowning. No autopsy was conducted.

Defendant's counsel made timely objection to both the qualifications of Raper to express an expert opinion with respect to the cause of death, and to the question which elicited such opinion. The trial court overruled these objections.[1]

Raper further testified from personal knowledge that the water in the pool was warm enough to cause some people to become faint and sick when they jumped in.

Plaintiff offered in evidence a certified copy of the Montana death certificate signed by Raper as coroner. The portion of the certificate in which the cause of death was stated to be drowning bore the heading "Medical Certification." Because it was undisputed that Raper was not a physician, the trial court sustained defendant's objection to the admissibility of this certified copy.

Plaintiff rested his case after his own and Raper's testimony and the offering of the certified copy of the death certificate. Defendant then moved for a nonsuit and, when such motion was denied, proceeded to present its evidence.

Defendant first read into evidence the deposition of Lewis L. Locke. Locke testified that he had been familiar with the Norris Hot Springs since 1914 and was employed in August, 1959, by the committee which operated the pool. The pool is about 36 feet square, the water is from 45 to 50 inches deep, and the August water temperature is about 90 degrees. The pool is constructed of two-inch-thick

---

[1] The question of whether or not a person is competent to testify as an expert witness, because he has special knowledge of the matter in issue, is for the trial court and is reviewable only for possible abuse of discretion. *Wojciuk v. United States Rubber Co.*, ante, p. 224, 120 N. W. (2d) 47; *Northern Supply Co. v. Wangard* (1904), 123 Wis. 1, 16, 100 N. W. 1066; and 20 Am. Jur., Evidence, p. 660, sec. 786.

planks. The planks constituting the floor are spaced apart so as to permit the water to rise from the springs below. About twice each month the pool is drained, cleaned, and scrubbed. It is a "soaking" rather than a swimming pool and there are wooden steps for the bathers to sit on. Since 1914 Locke had never heard of a drowning which occurred in the pool. He was not at the pool the night of August 17, 1959.

Defendant next called Dr. James L. Jaeck as an expert witness. Dr. Jaeck is a physician residing at Sheboygan, Wisconsin. He received his M. D. degree from the University of Minnesota in 1936 and was in general practice until 1949. From 1949 to 1953 he took postgraduate work in pathology at the University of Minnesota. Since 1953 he has specialized in pathology at La Crosse and presently at Sheboygan. He is licensed to practice medicine in Wisconsin, and, in 1956, was certified by the American Board of Pathology as qualified to practice pathology. Dr. Jaeck testified that the accepted medical method of determining death by drowning is by a complete postmortem examination. He explained that death by drowning is not caused by water getting into the lungs; instead, the water in which the face is submerged prevents air from reaching the lungs and the victim dies of asphyxiation. The characteristic finding in case of drowning is a large, foamy, aerated, overexpanded lung. Water *"per se"* is not found in the lungs in drowning. Dr. Jaeck testified that *it would be absolutely impossible to determine the cause of death from the examination conducted by Raper.*

Victor Lubner, son of the plaintiff, was then called to identify plaintiff's signature on Exhibit 3, a signed statement given by plaintiff to defendant. Plaintiff was then called adversely. He admitted that he talked to Dettmann around August 18, 1959, and told him that he understood his wife had died of a heart attack and not by accidental means. He further told him that she had treatment and underwent

an operation for high blood pressure in Milwaukee in 1951. He also admitted having then signed a paper given him by Dettmann and another man but could not recognize his handwriting thereon (Exhibit 3). Plaintiff on request signed his name on a piece of paper and thereby established the identity of his signature on Exhibit 3, so that it was admitted in evidence. Exhibit 3 is largely cumulative evidence of the facts which plaintiff admitted telling Dettman on August 18, 1959.

Defendant then rested, and plaintiff called Luella Herbst, Mrs. Lubner's sixteen-year-old niece, as a rebuttal witness. She testified that on the evening of August 17, 1959, she was "swimming in the pool" with her aunt, Mrs. Lubner. This is the only testimony in the record that Mrs. Lubner had been in the water on the night she died. Miss Herbst was asked no questions regarding what happened to Mrs. Lubner there that night. Miss Herbst stated that she herself started to walk down some steps into the pool, that one of the steps was slippery, and that she fell into the water and started swimming. She further testified that the water temperature was like that of a nice hot bath. After her testimony, the case was submitted to the jury.

On this record, we hold it was error for the trial court to have denied defendant's motion for directed verdict. Plaintiff's case must rise or fall on Raper's opinion evidence that death was due to drowning based on his "test" of drawing a glassful of water out of the chest cavity. We deem the probative value of Raper's opinion evidence entirely destroyed by the medical testimony of Dr. Jaeck absent any medical testimony to the contrary.

This court has held that before an award may be made for future pain, suffering, and disability, there must be competent medical testimony to support same. *Diemel v. Weirich* (1953), 264 Wis. 265, 268, 269, 58 N. W. (2d) 651, and *Rogers v. Adams,* ante, p. 141, 119 N. W. (2d)

349. We hold that when a competent medical expert testifies that cause of death cannot be determined by performing a certain test on a dead body, and there is nothing inherently improbable in such testimony, the testimony of a layman that he determined the cause of death by such a test is not competent evidence to go to the jury on that issue.

Nevertheless, we wish to make it clear that we do not decide that death by drowning can never be established by lay testimony. For example, anyone is competent to testify to a drowning which he actually witnessed. Furthermore, drowning can also be proved by circumstantial evidence such as the finding of an overturned boat, in which the person claimed to have drowned was an occupant, and later the body itself.

In the instant case, at least three persons were with Mrs. Lubner at the pool. All were close relatives of the deceased and were in the courtroom during the trial. None of the three were called to testify how the five-foot, six-inch-tall Mrs. Lubner met her death in water which was 45 to 50 inches deep. Since these witnesses were deceased's relatives, it would be more natural for plaintiff to call them to testify to the facts leading up to Mrs. Lubner's death than for defendant to do so. Thus, an inference arises from plaintiff's failure to call these witnesses that their testimony would have been unfavorable to plaintiff. *Feldstein v. Harrington* (1958), 4 Wis. (2d) 380, 388, 90 N. W. (2d) 566.

Plaintiff advances two contentions which the court has considered in reaching the conclusion that the trial court erred in denying defendant's motion for directed verdict. The first is that the trial court erred in excluding the certified copy of the Montana death certificate which plaintiff offered in evidence. The second is that had this certified copy been admitted, it would have established a *prima facie* case that Mrs. Lubner died as a result of accidental drowning

which defendant's evidence did not rebut. See *Estate of Eannelli* (1955), 269 Wis. 192, 212, 68 N. W. (2d) 791. If plaintiff were right with respect to both contentions, then we would have to remand for a new trial instead of disposing of the case on its merits.

The trial court excluded the certified copy of the death certificate on the grounds that the heading "Medical Certification" controlled the portion of that certificate under which Raper entered the words "By drowning" as the cause of death, and that a physician alone was competent to enter such medical certification. We deem this a reasonable conclusion in absence of any showing that Montana statutes permit such medical certification to be completed by a coroner who is not a physician. Plaintiff has made no such showing. Therefore, on the basis of the record before us and briefs of counsel, we find no error in the trial court's ruling.

Nevertheless, even if the certified copy of the death certificate had been received in evidence, so that it established *prima facie* that death occurred by drowning, we hold that the *prima facie* evidence therein as to cause of death was rebutted by other evidence in the record. This rebutting evidence was the fact that Raper was not a physician and that he arrived at his conclusion, that death occurred by drowning, by the particular procedure he described. Because the competent medical evidence in the case established that it would be impossible by use of such procedure to determine that drowning was the cause of death, we hold Raper's testimony with respect to cause of death incompetent. Raper's statement in the death certificate that drowning was the cause of death can rise no higher than his own incompetent testimony.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing plaintiff's complaint on the merits.