SHAW, by Guardian *ad litem,* and another, Plaintiffs, v. WUTTKE and another, Defendants. [Two appeals.]

*October 4—November 2, 1965.*

For the plaintiffs there were briefs by *Kivett & Kasdorf*, attorneys, and *Alan M. Clack* and *James P. Reardon* of counsel, all of Milwaukee, and oral argument by *Mr. Clack*.

For the defendants there were briefs by *Giffin, Simarski & Koch*, attorneys, and *E. J. Simarski* of counsel, all of Milwaukee, and oral argument by *E. J. Simarski*.

HALLOWS, J.   In considering it had erred in giving the emergency-doctrine instruction the trial court reasoned the

defendant was negligent in the management and control of his car, which negligence contributed to the creation of the emergency. In reaching this conclusion the trial court assumed the plaintiff was riding his bicycle at a speed of five miles per hour and reasoned that at that rate the plaintiff would take two and a half seconds to travel from his position in the alley where he was first seen by the defendant to the point of impact in the street and the defendant going 20 miles an hour, which he testified was his speed, must have then been some 70 feet from the alley and could have stopped his car in 47 feet. This version of the evidence might be taken by the trier of the facts, but to hold this as a matter of law the rest of the evidence must not be sufficient to sustain a contrary view. There was, however, credible evidence which would support the view the defendant was much closer to the alley when the plaintiff came out of the alley into the street without stopping.

There is no basis for assuming the plaintiff was traveling only five miles an hour in view of the testimony of the plaintiff, the defendant, and other witnesses that the plaintiff was traveling fast. The alley was downgrade and the plaintiff was trying to catch up with his friend who was ahead of him on his bicycle. We think the jury could ascribe more weight to the testimony of the plaintiff's speed than the trial court did. It was undisputed the plaintiff came out of the alley on his bicycle fast or very fast, that he could not be seen from the street south of the alley until he emerged from a hedgerow which extended along the south edge of the alley to a point two and a half feet east of the sidewalk or 6 or 8 feet from the curb.

The defendant testified he did not put his brakes on until the time of impact because it all happened so fast he was not able to apply his brakes sooner. There were skid marks starting beyond the point of impact and the defendant's car came to a stop some 46 feet beyond the point of impact

which would be approximately correct if he was going 20 miles an hour. It is true, the defendant gave several versions of his speed as being 15, 20, and even 25 miles per hour and there are other discrepancies in his testimony but these are for the jury to resolve.

Before a party is entitled to the benefits of the emergency doctrine he must be free from negligence which contributed to the creation of the emergency. *Cook v. Thomas* (1964), 25 Wis. (2d) 467, 131 N. W. (2d) 299; *Borowske v. Integrity Mut. Ins. Co.* (1963), 20 Wis. (2d) 93, 121 N. W. (2d) 287; *Baird v. Cornelius* (1961), 12 Wis. (2d) 284, 107 N. W. (2d) 278; *Blasi v. Drafz* (1960), 12 Wis. (2d) 14, 106 N. W. (2d) 307; *Deignan v. New Amsterdam Casualty Co.* (1958), 2 Wis. (2d) 480, 87 N. W. (2d) 529; *Hutzler v. McDonnell* (1942), 239 Wis. 568, 2 N. W. (2d) 207. If there is a factual dispute as to such negligence and assuming the time element is so short as to make the doctrine otherwise applicable, a person is entitled to the emergency-doctrine instruction and it is for the jury to determine its application. *Misiewicz v. Waters* (1964), 23 Wis. (2d) 512, 127 N. W. (2d) 776. If, however, it can be held a person was negligent as a matter of law and such negligence contributed to the emergency, then such person is not entitled to the emergency-doctrine instruction. Under the facts the time element, at the most two and a half seconds and more probably less, was short enough to apply the doctrine if the defendant was not negligent, or if so, such negligence did not contribute to the emergency. We think the trial court was in error in holding on motions after verdict that as a matter of law the defendant was negligent and such negligence contributed to the emergency and, therefore, it should not have given the emergency-doctrine instruction.

Since the order granting a new trial must be reversed, it is unnecessary to consider the plaintiff's appeal that the new

trial should include the issue of damages because, the plaintiff having been found guilty of negligence exceeding 50 percent, any question concerning damages is academic.

The petition for review to sustain the order granting a new trial assigns as error the trial court's ordering the plaintiff's attorney to produce a prior signed written statement of a witness so that defendant's counsel could use it for impeachment purposes. The plaintiff had examined as his witness one Susan Bast who stated in substance that at the time she saw the plaintiff coming out of the alley into the street the defendant's automobile was just coming past the north side of the third house south of the alley. On cross-examination she was asked if she had given a written statement to one of the plaintiff's trial attorneys sometime prior to trial. Upon her giving an affirmative answer, the court ordered the statement to be produced and it was used by defendant's counsel in his cross-examination. This statement was to the effect the witness was not sure how far the defendant's car was south of the alley when she saw the plaintiff come into the street from the alley.

It is claimed this statement was part of the attorney's work product, that it was not evidence in the case because the witness was not a party, and that the witness was not shown to have refreshed her recollection with the statement and, therefore, was privileged from disclosure. We do not think it is important that the witness did not use the statement to refresh her memory or that it was not independent evidence because the statement was used only for impeachment. The plaintiff relies on *Lehan v. Chicago & N. W. R. Co.* (1919), 169 Wis. 327, 172 N. W. 787.[1] However, re-

---

[1] This case was followed in *Bell v. Milwaukee Electric Railway & Light Co.* (1919), 169 Wis. 408, 172 N. W. 791; *Kellner v. Christiansen* (1919), 169 Wis. 390, 172 N. W. 796; and *Wojciechowski v. Baron* (1957), 274 Wis. 364, 80 N. W. (2d) 434.

cently this court has modified the rule announced in the *Lehan Case* without deciding the exact extent of immunity from disclosure afforded to the "work product of the lawyer."

The problem generally arises because of the enlarged scope of sec. 326.12, Stats., allowing discovery examination of persons who are not parties to the action. In *State ex rel. Reynolds v. Circuit Court* (1961), 15 Wis. (2d) 311, 112 N. W. (2d) 686, 113 N. W. (2d) 537, we dealt with the problem of privileged communication and work product and pointed out that pretrial discovery under sec. 326.12 might be used to reach certain information or relevant opinions formed by an expert witness. In *Jacobi v. Podevels* (1964), 23 Wis. (2d) 152, 127 N. W. (2d) 73, we held a statement given by an assured to his insurance carrier at a time when no action had been commenced or was imminent was not an attorney's work product or a confidential communication and overruled the *Wojciechowski Case* in respect to the confidentiality of such a statement by an insured to his insurer. In *Merlino v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. (2d) 571, 127 N. W. (2d) 741, we held that where opposing counsel had obtained the production of and used a witness' prior written statement for impeachment purposes, it was not error for the court not to admit the entire statement in evidence at the request of counsel who had produced the statement. In the footnote in the opinion, the court cited *Kurz v. Collins* (1959), 6 Wis. (2d) 538, 95 N. W. (2d) 365, and the *Jacobi Case* for the proposition that opposing counsel had a right to the production of the witness' prior written statement for impeachment purposes. The facts of these cases, however, did not involve an attorney's work product but statements given to an insurance company by their insured.

The work-product-of-a-lawyer concept had its origin in *Hickman v. Taylor* (1947), 329 U. S. 495, 67 Sup. Ct. 385,

91 L. Ed. 451, which dealt with an interpretation of Rule 26 of the Federal Rules of Civil Procedure for the taking of depositions of persons not a party to the action. The *Hickman Case* held that the federal rule did not contemplate compelling an attorney to produce his work product which included written statements by witnesses because such an attempt fell "outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims." The court pointed out the immunity was not without limitations.

Most of the cases have dealt with work product in relation to pretrial discovery and the policy reasons for protecting a lawyer's work product at that time are not so compelling as to require its protection at the trial. One must distinguish the case of a prior written statement given by a witness to counsel in the course of his preparation for trial and communications given in an attorney-client relationship which privilege extends throughout the trial. Only a few cases have been found, and they are based on a more restrictive discovery statute than ours, which allow the immunity of a lawyer's work product to exist after the commencement of trial in respect to prior statements of a witness. See Anno. Discovery—Statements of Witnesses, 73 A. L. R. (2d) 12. We hold the immunity of the attorney's work product in respect to a written statement ceases to exist when the person making the statement is placed on the stand as a witness at the trial. By becoming a witness the person subjects himself to the risks of impeachment and the attorney has had the benefit of his work product.

The plaintiff contends it was error to admit in evidence statements relating to the speed of the plaintiff on his bicycle. Several witnesses as well as the plaintiff and defendant testified the plaintiff was going "fast" or "very fast." At

the request of the plaintiff the court gave an instruction to the effect that such terms had little probative value. The question here presented is not how much probative value such terms have but whether the testimony is incompetent and inadmissible as evidence. Plaintiffs rely on *Ronning v. State* (1924), 184 Wis. 651, 200 N. W. 394. In that case the court indicated such evidence was incompetent and said the statements of speed of an automobile in such terms as "fast," "real fast," "slow," or "real slow" could only be persuasive when comparison was made with other vehicles whose speed is known. The case was distinguished in *Gerbing v. McDonald* (1930), 201 Wis. 214, 229 N. W. 860, where it was held that terms of "fast" or "real fast" and that "it was speeding along," although indefinite as to the speed of a motor vehicle, were not incompetent notwithstanding their lack of precision.

In *Merkle v. Behl* (1955), 269 Wis. 432, 69 N. W. (2d) 459, we held the testimony of "pretty fast for just starting up" was sufficient to sustain a finding of negligence of excessive speed where there was also testimony the tires squealed and the engine raced. In respect to the speed of a seven and one-half-year-old boy on a bicycle chasing another child down a somewhat inclined alley, we believe that although the characterizations "fast" and "pretty fast" are indefinite expressions and relative they are of sufficient probative value as not to be incompetent. Normally, people do not judge bicycle speed in terms of miles per hour and it would be unreasonable to require it. Certainly "fast" or "very fast" in reference to a 20-inch bicycle ridden by a seven and one-half-year-old boy conveys a rate of speed which the same terms would not convey in respect to an adult riding a motorcycle or driving in a car on a highway. These expressions of speed are competent and are as definite

as the statutory definition of reasonable and prudent speed in sec. 346.57 (2), Stats., prohibiting the driver of a vehicle from proceeding "at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing." See Anno. Admissibility and probative effect of testimony that motor vehicle was going "fast" or the like, 92 A. L. R. (2d) 1391.

At the trial a police officer testified on cross-examination that when he arrived at the scene a few minutes after the accident he saw a car parked four to six feet south of the alley on the east side of North Stowell avenue. On redirect, he testified he had no direct knowledge whether the car was parked at that location at the time of the accident but the defendant pointed out the car to him as having been there at the time of the accident. This testimony, it is argued, should have been stricken on the ground the officer could not testify as to the location of the car at the time of the accident. As we read the testimony the police officer did not testify the car was there at the time of the accident. The location of the car at the time of his arrival was within his personal knowledge and testimony to that effect was admissible. *Jacobson v. Bryan* (1944), 244 Wis. 359, 12 N. W. (2d) 789. This testimony does not fall within the rule of *Smith v. Rural Mut. Ins. Co.* (1963), 20 Wis. (2d) 592, 123 N. W. (2d) 496, where we held a police officer could not testify to any facts in a traffic report excepting those based upon his own personal knowledge.

At the time of the accident the defendant had a fellow student with him as a passenger. At the time of the trial the passenger was in military service and stationed in New Jersey. Neither he nor his testimony was produced at the trial by the defendant. The trial court refused the request of the plaintiff to instruct the jury as to the inference which might be drawn from the failure of the defendant to produce

the witness or his testimony. The inference of unfavorable tenor of the evidence which may arise from the failure of a party to call a material witness applies to those situations where the party has control of the witness or whom it would be more natural for such a party to call than the opposing party. *Feldstein v. Harrington* (1958), 4 Wis. (2d) 380, 90 N. W. (2d) 566; also *Lubner v. Peerless Ins. Co.* (1963), 19 Wis. (2d) 364, 120 N. W. (2d) 54; 20 Am. Jur., Evidence, p. 188, sec. 183; 2 Wigmore, Evidence (3d ed.), p. 162, sec. 285. We think a satisfactory explanation appears in the fact the passenger was in the armed forces and was stationed in New Jersey outside the jurisdiction at the time of trial. Certainly the defendant had no control over his fellow student and could not require his return to Wisconsin. As to the failure to produce his testimony, we cannot say it is more natural or reasonable for the defendant to take a deposition in New Jersey than it would be for the plaintiff who had the burden of proof to establish the defendant's negligence. Not every failure to produce evidence indicates the tenor the absent evidence would be unfavorable to that party's cause. There must be a reasonable relationship between the failure to produce the evidence and the inference to make the inference permissible and grounded in fact.

As the last assigned error it is contended the trial court should not have instructed the jury in respect to the plaintiff that a violation of a safety statute amounts to negligence. It is argued that since the plaintiff was a child of some seven and one-half years he could not be held negligent as a matter of law regardless of whether a statutory violation was involved or not. It is admitted the plaintiff was in violation of sec. 346.18 (4), Stats., because in entering the street from the alley he failed to yield the right-of-way to the approaching defendant motorist on the highway. We think the contention that a child riding a bicycle may not be negligent

as a matter of law was settled adversely to the plaintiff in *Miller v. Keller* (1953), 263 Wis. 509, 57 N. W. (2d) 711. In that case the minor, ten years old and in fifth grade, had a passenger on the back of his bicycle. It was held he was negligent as a matter of law because he violated sec. 85.39 (1) (now sec. 346.92 (1), Stats.), which is a safety statute, prohibiting driving a vehicle when any person is upon any portion thereof not designed or intended for the use of passengers. The legal effect of a violation of a safety statute is visited upon adults and minors alike and there is no limiting or conditional application to a child of seven and one-half years. Plaintiff cannot complain that the court did not hold him negligent as a matter of law rather than submitting the question to the jury. The plaintiff certainly was not prejudiced by the submission of this question.

Since the trial court did not err in the trial of this case, the verdict should stand and judgment entered thereon. This requires a reversal of the order granting a new trial.

*By the Court.*—Order reversed.

BEILFUSS, J. (*dissenting in part*). I respectfully dissent from that part of the majority opinion which holds, "the immunity of the attorney's work product in respect to a written statement ceases to exist when the person making the statement is placed on the stand as a witness at the trial."

In *Hickman v. Taylor* (1947), 329 U. S. 495, 510, 67 Sup. Ct. 385, 91 L. Ed. 451, cited by the majority, it is stated, persuasively :

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary

intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways— aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

I do not criticize the cases, cited in the majority opinion, upon their facts, dealing with latitude of pretrial discovery.

The trial of an action is not the same as pretrial discovery. The credibility of the witness and the integrity of counsel are matters constantly before the trier of the fact, be it a jury or a judge.

To require counsel in the presence of a jury upon demand to produce a part of his work product may place a trial attorney in a most difficult dilemma. The use and the nature of material taken from his file by the opposing counsel might well, in some instances, require an explanation by counsel in response to his obligation to his own client. But before he takes the stand to offer necessary explanation he finds himself confronted with Canon 19 of the Canons of Ethics, which provides:

"19. *Appearance of Lawyer as Witness For His Client.* When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

Not only does the canon criticize this practice but so has this court in several cases,[1] some of which are cited in the footnote below.

In *Roys v. First National Bank* (1924), 183 Wis. 10, 21, 197 N. W. 237, we stated:

"This rule is not to be followed simply because the American Bar Association has adopted it, but with better reason because it states ethical considerations that may appeal to every lawyer as sound. A lawyer has a retainer— as a witness he is not entitled to such. He will find it hard to disassociate his relation to his client as a lawyer and his relation to the party as a witness. This case bears witness of that fact."

I would hold the statement of the witness taken by an attorney is a part of his work product and as such is privileged and not subject to demand to produce. This rule would not be unduly restrictive upon the opposing party—for impeachment purposes he still has his traditional right of cross-examination including prior inconsistent statements, written or oral, made to persons other than opposing counsel.

[1] *Zeidler v. State* (1926), 189 Wis. 44, 206 N. W. 872; *Baumgartner v. State* (1929), 198 Wis. 180, 223 N. W. 419, 224 N. W. 474; *Borger v. McKeith* (1929), 198 Wis. 315, 224 N. W. 102; *Interior Woodwork Co. v. Buhler* (1932), 207 Wis. 1, 238 N. W. 822; *Estate of Weinert* (1962), 18 Wis. (2d) 33, 117 N. W. (2d) 685; *Mack Trucks, Inc., v. Sunde* (1963), 19 Wis. (2d) 129, 119 N. W. (2d) 321.