Argued May 2, reversed and remanded August 23, 1967

SKULTETY, *Respondent and Cross-Appellant, v.*
HUMPHREYS, *Appellant.*

431 P. 2d 278

*Frederic P. Roehr,* Portland, argued the cause for appellant. With him on the brief were Vergeer, Samuels, Cavanaugh & Roehr, Portland.

*Harold A. Fabre,* Pendleton, argued the cause for respondent. With him on the brief were Fabre & Collins and Leeroy O. Ehlers, Pendleton.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, DENECKE, REDDING[*] and FORT,[*] Justices.

## McALLISTER, J.

This is a personal injury action arising from a three-car highway accident in Umatilla county. The jury found for plaintiff against defendant Humphreys and exonerated the defendant Dungan. Defendant Humphreys appeals from the judgment for plaintiff, and plaintiff cross-appeals against defendant Dungan, who made no appearance in this court.

The appellant's first assignment of error alleges that the court erred in (a) refusing to strike from

---

[*] Redding and Fort, JJ., did not participate in this decision.

the complaint the allegation of permanent injury, (b) refusing to instruct the jury that there was no evidence of permanent injury, and (c) in giving an instruction concerning plaintiff's life expectancy.

Plaintiff was 44 years old at the time of the accident. She testified that her neck was jerked suddenly backward by the impact, that she developed severe headaches and intense pain in her neck and head, that she consulted a physician, was given medication and physical therapy, including traction, and was referred to a physical therapist who gave her further physical therapy treatments. Plaintiff testified that at the time of the trial, over a year and a half after the accident, she was not able to do any lifting or heavy work connected with her job or household duties, and that she still suffered headaches and pain from time to time for which she took medication.

Plaintiff's physician testified concerning her future suffering and disability as follows:

"Q. What sort of limitations, if any, do you expect Mrs. Skultety to have in her future because of these injuries?

"A. Well, in observing her through this year and a half that I have treated her, and judging according to that, I would feel that she would have some residual impairment based on this year and a half of observation. I believe she is incapacitated to a certain extent; and according to her pattern over the past year and a half I would feel that will continue into the future. I cannot give you any time on this, but I would think that she will be incapacitated in the future.

"Q. Would that be definitely or indefinitely in the future?

"A. I couldn't say.

"*    *    *    *    *

"Q. Do you have any opinion as to the permanency of this condition of Mrs. Skultety?

"A. Well, again, in observing her, I would think that she will be disabled in the future. I cannot give you the time interval however.
"*   *   *   *   *

"Q. To what extent, Doctor, in your opinion, would you expect Mrs. Skultety to have some disability in the future? What do you expect her to experience because of her condition?

"A. I cannot give you that. In terms of time?

"Q. No; what she would experience.

"A. What she will experience. I am sorry. Well, based again on this past year and a half I will say she will continue to have some degree of pain, and she will be limited to a certain extent in terms of the use of her upper extremities, perhaps, and neck. I think she has shown some disability now with that. She does work; however, she states to me that it's working that definitely does aggravate this.   *   *   *
"*   *   *   *   *

"Q. Now, Mr. Fabre questioned, in some degree, the limitations in the future. Is it possible that there will be some limitation in the future?

"A. Is it possible? Yes, it is possible.

"Q. But is it probable?

"A. I would say that the probability, according to what I have seen previously, it's probable that we will have some degree of limitation.

"Q. Now, for what period of time?

"A. I can't say.

"Q. In other words, it could end at any time? Is that correct?

"A. It could.

"Q. It could end tomorrow?

"A. It's possible.
"*   *   *   *   *

"Q. If she would do any number of things that a normal active person of her age would do, continue to do throughout her lifetime, she may trigger this thing again?

"A. Yes, she may.

"Q. And would you think that would be a usual and normal reaction.

"A. I would think it would be.

"* * * * *

"Q. Doctor, when someone strains their neck from some of these activities, maybe stepping suddenly off, would you expect that kind of strain to persist over a long period of time, such as has been the case with Mrs. Skultety?

"A. I wouldn't expect it to persist like this.

"Q. And when do you expect these whiplash injuries to persist like this?

"A. I don't think you can predict those at all."

The doctor also testified that X-rays taken at the outset of treatment, just before trial, and in the interim, were "normal in all respects," and that there was "a high degree of subjectivity" in plaintiff's symptoms.

■■ At the outset we wish to emphasize the distinction between future pain and suffering and permanent injury. They are not the same and the failure at times to distinguish between them may have caused some confusion in our cases.[1] In the context of personal injury litigation a permanent injury is generally defined as one which will last during the life of the injured person. *Kujawa v. Baltimore Transit Company*, 224 Md 195, 167 A2d 96, 89 ALR2d 1166 (1961); *Colby*

---

[1] See, Bernhard, *Damages for Personal Injury—The Law in Oregon*, 44 Or L Rev 95, 109 (1965), where the author concludes that a plaintiff in order to recover for future pain and suffering "must show that the injury suffered is a permanent one."

*v. Thompson,* (Mo App) 207 SW 73 (1918); *Stahlberg v. Brandes,* (Mo App) 299 SW 836 (1927); *Sykes v. Republic Coal Co.,* 94 Mont 239, 22 P2d 157, 160 (1933); *Du Cate v. Town of Brighton,* 133 Wis 628, 114 NW 103 (1907). In *Perry v. Pickwick Stages of Oregon,* 117 Or 598, 605, 243 P 787 (1926), this court said that permanent injury includes *ex vi termini* future pain and suffering. Although permanent injury will usually include future pain and suffering, the reverse is not true; there may be future pain and suffering without permanent injury. *Odrlin v. Dugan,* 137 Or 140, 142, 1 P2d 599 (1931).

■ It is, of course, well settled that future pain and suffering is a proper element of damages for personal injuries. *Odrlin v. Dugan,* supra; *Rugenstein v. Ottenheimer,* 70 Or 600, 140 P 747 (1914); 22 Am Jur2d 155, Damages § 106 (1965); Annotation, 81 ALR 423 (1932).

■ We reaffirm the rule announced in the *Odrlin* case that future pain and suffering is a proper element of damages without proof that the injury is permanent. *Arkansas Drilling Co. v. Gross,* 179 Ark 631, 17 SW2d 889, 894 (1929); *Consolidated Coach Corporation v. Hopkins,* 228 Ky 184, 14 SW2d 768, 771 (1929); *Kujawa v. Baltimore Transit Company,* supra, 167 A2d at 100; *Colby v. Thompson,* supra, 207 SW at 74; *Wood v. Chicago, B. & Q. Ry. Co.,* 119 Mo App 78, 95 SW 946 (1906); *Du Cate v. Town of Brighton,* supra, 114 NW at 105. The statement to the contrary in *Reid v. Yellow Cab Co.,* 131 Or 27, 35, 279 P 635, 67 ALR 1 (1929), is expressly overruled, together with any like implications in other cases.

■ In the case at bar the court did not mention permanent injury in its instructions, but told the jury that in determining the amount of general damages it

could consider "such pain, anxiety and discomfort which it is reasonably probable the plaintiff will suffer in the future" from the injury.[2] No exception was taken to this instruction, and we think it was eminently proper. There was evidence that plaintiff would suffer pain and discomfort in the future, but no evidence that her injuries would be permanent.

■ At the conclusion of the testimony appellant moved the court to strike from the complaint the allegations of permanent injury, and also requested the court to instruct the jury that there was no evidence of permanent injury. The appellant also excepted to an instruction advising the jury the life expectancy of a person of plaintiff's age was 28.67 years and further instructing that such life expectancy "should be considered by you in arriving at the amount of damages if you find the plaintiff is entitled to a verdict." We think the court erred in each of the particulars alleged and that the combined errors require a reversal and a new trial on the issue of damages.

■ When it appeared that there was no evidence tending to prove that plaintiff's injuries were permanent, the court upon a proper request should have specifically withdrawn this issue from consideration by the jury. In *Cook v. Kinzua Pine Mills Co.*, 207 Or 34, 70, 293 P2d 717 (1956), and *Denton v. Arnstein*, 197 Or 28, 52, 250 P2d 407 (1952), we held that "in any case where the evidence is insufficient to justify the submission of the issue of permanent injury to the jury, it is better practice for the court to take the question directly from the jury pursuant to a proper request therefor." In the two cases cited we held that the error was not prejudicial because the instructions con-

---

[2] From Instruction No. 30.02, Uniform Jury Instructions of the Oregon State Bar.

cerning the measure of damage mentioned only future pain and suffering. In this case the failure to withdraw the issue of permanent injury from the jury was compounded by the instruction that the plaintiff's life expectancy should be considered by the jury in arriving at the amount of damage if they found for plaintiff.

■■ It is almost universally held that the admission into evidence of mortality tables in a personal injury case where there is no evidence of a permanent injury is reversible error. *Pensacola Sanitarium v. Wilkins,* 64 Fla 407, 60 So 128 (1912) ; *Foster v. Village of Bellaire,* 127 Mich 13, 86 NW 383 (1901) ; *Welstead v. Jim Ryan Construction Co.,* 160 Neb 87, 69 NW2d 308, 312 (1955) ; *L'Esperance v. Sherburne,* 85 NH 103, 155 A 203, 209 (1931) ; *Dominguez v. Albuquerque Bus Co.,* 58 NM 562, 273 P2d 756, 50 ALR2d 414 (1954) ; *MacGregor v. Rohde Island Co.,* 27 RI 85, 60 A 761, 763 (1905) ; *Tenney v. Rapid City,* 17 SD 283, 96 NW 96 (1903) ; *Snyder v. Great Northern Ry. Co.,* 88 Wash 49, 152 P 703, 706 (1915) ; Annotation, 50 ALR2d 419, 431 (1956). The Iowa court has held to the contrary in two cases, but they are not persuasive. See, *Schneider v. Swaney Motor Car Co.,* 257 Iowa 1177, 136 NW2d 338, 345 (1965) ; *Ruud v. Grimm,* 252 Iowa 1266, 110 NW2d 321, 326 (1961). We see no distinction between the admission of mortality tables into evidence and the giving of the same information to the jury by way of the court's instructions.

■ Since the finding of the jury on the question of liability on the part of the defendant Humphreys is not challenged by any assignment of error, it is unnecessary to retry that issue. The new trial will be limited to the issue of damages recoverable by the plaintiff. *Brown v. Bonesteele,* 218 Or 312, 335, 344 P2d 928 (1959) ; Annotation, 85 ALR2d 9, 61 (1962).

■ The appellant also excepted to the refusal of the court to give a requested instruction on the duty of the plaintiff to use due care to minimize her injuries. We do not know, of course, what evidence will be offered on a new trial, but if there is evidence that plaintiff by continuing to work and by other activities aggravated her injuries to some extent, an appropriate instruction, if requested, should be given to the jury. In *Boyd v. Grove,* 89 Or 80, 83, 173 P 310 (1918), this court said: "[t]he duty of a party injured by the tort of another is to exercise the diligence of an ordinarily prudent man to minimize the damages." See, Annotation, 48 ALR2d 346, 349 (1956), and 4 Restatements, Torts, § 918 (1), 601.

Plaintiff has appealed from the judgment in favor of the defendant Dungan, and as her sole assignment of error alleges that the court erred in failing to give the following requested instruction:[®]

"When the negligence of two or more persons concurs in proximately causing damage to another, each such person is liable for the entire damage regardless of the relative degree to which he has contributed to it."

■ We should properly decline to consider this assignment since the requested instruction has not been made a part of the record in this case, either as a part of the transcript or by inclusion in the trial court file. If error is to be assigned to failure to give requested instructions, it is essential that the instructions be made a part of the record by inclusion in the transcript so that they may be authenticated by the order settling the transcript. ORS 19.078.

---

[®] Instruction No. 12.15, Uniform Jury Instructions of the Oregon State Bar.

■ However, assuming that the instruction was properly requested, we think the court did not err in declining to give it. Plaintiff alleged in her complaint that the collision was caused by the concurrent negligence of both defendants. Both defendants were charged in general terms with driving "without due caution and circumspection and at a speed and in a manner so as to endanger, or be likely to endanger, any person or property on said highway." There were several separate charges of negligence against the defendant Humphreys. The defendant Dungan was charged separately with driving without having the headlights of his automobile lighted, and this was the gravamen of plaintiff's charge against him. The court read verbatim the charges of negligence to the jury including the allegation that the "sole and only cause of said collision and said resulting injuries to plaintiff was the concurrent negligence of the defendants," and the further allegation that as a result of the alleged "concurrent acts of negligence" plaintiff sustained the injuries complained of.

The court also instructed the jury that "[i]n order to recover it is necessary that the Plaintiff prove, by a preponderance of the evidence, that the Defendants are negligent in at least one respect charged in the Complaint which was a proximate cause of the damage to the Plaintiff." The court also advised the jury that "[t]he law does not attempt to compare the negligence of one party as against that of the other," and that "[n]egligence complained of need not be the only cause, but must be one of them."

According to plaintiff the accident occurred when the plaintiff turned to the left side of a two-lane highway to pass a slow moving vehicle ahead of her. When plaintiff was alongside the slow moving vehicle she

first saw the Dungan car coming toward her and immediately tried to slow down and turn back to her own side of the road. Plaintiff's car was struck by the car driven by defendant Humphreys who was following plaintiff and had also turned out behind plaintiff to pass the slow moving vehicle.

This case was pleaded, tried, argued and submitted on plaintiff's theory that her injuries were caused by the concurrent negligence of both defendants. Taking the instructions as a whole, her theory of the case was fully, fairly and adequately submitted to the jury by instructions to which no exception was taken by plaintiff. There could be no doubt in the mind of the jury as to its duty to find against Dungan if it found that his alleged negligence contributed in any degree to the collision. There was no necessity to give the requested instruction, which at best would only have elaborated on and been repetitive of the instructions already given. In the case of *Miller v. Thoma,* 247 Or 331, 429 P2d 575 (1967), we held that the refusal to give a somewhat similar cautionary instruction concerning the concurring negligence of the defendant and another motor vehicle operator not a party to the suit was not error where, as here, the jury was fully instructed concerning the law applicable to defendant.

The judgment in favor of the defendant Dungan is affirmed, and the judgment against the defendant Humphreys is reversed and the case remanded for a new trial on the sole issue of the amount of damages recoverable by plaintiff against defendant Humphreys.