Argued June 7, reversed and remanded with instructions
December 15, 1971, petition for rehearing denied March 1, 1972,
former opinion modified

## PACIFIC NORTHWEST BELL TELEPHONE COMPANY ET AL, *Appellants, v.* CENTURY HOME COMPONENTS, INC. ET AL,

*Respondents.*

491 P2d 1023
494 P2d 884

334

*Paul D. Clayton,* Eugene, argued the cause for appellants. With him on the briefs were Luvaas, Cobb, Richards & Fraser, Eugene.

*Richard Bryson,* Eugene, argued the cause for respondent Wood Components Co. With him on the brief were Windsor Calkins and Bryson & Robert, Eugene.

*Darst B. Atherly,* Eugene, argued the cause for respondent Century Home Components, Inc. With him on the brief were Thwing, Atherly & Butler and John C. Sihler, Eugene.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

DENECKE, J.

The plaintiff Pacific Northwest Bell had property in a warehouse which was destroyed by fire. A jury decided that the fire was not caused by the defendants in the operation of their wood manufacturing plant near the warehouse.

Plaintiffs contend the trial court erred in admitting certain testimony.

Sgt. Ayers, a state police officer assigned to the arson squad, was called by the plaintiffs and testified as an expert that the cause of the fire was the defendants throwing oil soaked sawdust into a wooden waste container. He also testified on direct examination that he had investigated the possibility that three boys started the fire and was of the opinion that they had not. Sgt. Ayers testified that the evidence that he found in his investigation was consistent with the boys'

stories that they had not started the fire. He testified that he found no evidence that the boys started the fire.

On cross-examination Sgt. Ayers stated that Bill Hood, an investigator for the defendants' insurers, told him that a young woman, Jane Davis, had told Hood that her brother, who was one of the three boys investigated, had admitted to her that he started the fire. Sgt. Ayers testified that despite this information, he saw no reason to pursue this aspect of the investigation any further. This testimony was all received without objection.

On redirect examination Sgt. Ayers repeated that he had never learned anything connecting the three boys with the fire. On recross-examination he was asked with reference to this testimony on redirect whether Hood had not told him that he had statements from people who heard Jane Davis state that her brother admitted to her that he started the fire. Sgt. Ayers answered that Hood had so told him, but Hood had also told him that Jane Davis would not sign a statement that her brother admitted to her that he started the fire. This also was received without objection.

The defendants called Hood. Over objection, he testified that he showed Sgt. Ayers statements from people that Jane Davis told these people that her brother admitted to her that he started the fire. He also answered over objection that he told Sgt. Ayers that Jane Davis told him that her brother admitted to her that he started the fire.

■ The rulings overruling the objections to Hood's testimony are assigned as error. We hold the trial court did not err. The testimony of Hood is repetitive

of the repeated testimony of Sgt. Ayers, which came in without objection. At the trial plaintiffs' counsel stated Hood's testimony was repetitive. "* * * [W]hen testimony has once been received without objection it is within the discretion of the trial court to receive s i m i l a r testimony subsequently offered." *Walker v. St. Vincent dePaul*, 239 Or 135, 138-139, 396 P2d 898 (1964). Accord, *State v. Ellis*, 243 Or 190, 194, 412 P2d 518 (1966).

The trial court was well aware of the limited purpose for which the testimony of either Ayers or Hood could be used. As requested by plaintiffs, the court instructed the jury as follows:

"Now, during the course of the trial, and upon cross examination of Sgt. Ayers, a witness for the Plaintiff, and on the direct examination of the witness Hood, called by the Defendants, testimony was introduced to the effect that Mr. Hood had from time to time discussed his investigation with Sgt. Ayers, and had discussed with him the possibility of arson by Steven Reynolds whose testimony was received by deposition. In this regard you are instructed that the testimony was received for the sole purpose of permitting the Defendants to question Sgt. Ayers as to the extent and thoroughness of his investigation and the validity of his conclusions as to the cause of the fire. Such testimony is not to be considered by you as any evidence that the fire was started by Steve Reynolds, or that he even told his sister that he had started the fire. You are instructed to disregard that testimony except for the purpose for which it was received as that has been explained to you."

Under these circumstances, particularly with this instruction, the trial court's ruling that Hood's testimony was admissible was within its discretion.

This aspect of the evidence brought about an-

other ruling of the trial court which is assigned as error. In the argument to the court upon the issue of whether Hood's testimony about Jane Davis's statement was admissible, the attorney for defendants stated he had a court reporter's statement of Jane Davis in which she acknowledged that she had told other people that her brother said he started the fire. The witness Hood on cross-examination testified that Jane Davis gave a statement that she heard her brother say he had started the fire. The witness referred to the statement as a deposition; however, from the entire context, it is clear he was referring to a written statement given to defendants' counsel. After Hood's testimony, plaintiffs' counsel moved the court to require defendants' counsel to produce the statement.

Plaintiffs rely upon ORS 41.615 which provides that upon a showing of good cause, the trial court may order a party to produce for inspection and copying any papers, etc., not privileged, "which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by ORS 45.151 * * *." ORS 45.151 provides that the deposition of any person can be taken at any time after the service of summons.

In *Southern Pacific v. Bryson*, 254 Or 478, 459 P2d 881 (1969), we held ORS 41.615(1) adopts the substance of Rule 34 of the Federal Rules of Civil Procedure. Rule 34 permits a party to inspect witnesses' statements when good cause is shown.

Defendants' counsel objected to producing the statement because it was the work product of a lawyer, and plaintiffs had not shown good cause. The trial court would not order the statement produced upon

the ground that the remarks made in the statement would have been inadmissible in evidence.

The first task in deciding this assignment is placing the issue in the proper category. This is not a problem of pretrial discovery. Pretrial discovery is a valid procedural tool; however, it is a "fishing expedition" in the sense that the searcher does not know what is available for "catching." For this reason, the searcher wants to use as large a net as possible. On the other hand, discovery under such circumstances can be abused; therefore, the right of pretrial discovery is limited by statute.

The motion to produce in the present case is not in this category. A specific piece of evidence, the statement, is known to exist and to be in the possession of the adversary counsel. The document contains evidence of known relevancy. If the document does not state what the witness testified the document states, the witness's credibility is impeached. Because of these factors the limitations applicable to pretrial discovery are not necessarily applicable to the plaintiffs' motion to produce.

■ ORS 41.615 is not applicable because plaintiffs' motion was not in pretrial discovery. Plaintiffs' motion was to examine the statement which had been referred to by the witness and the reason for the motion was to obtain the statement for possible impeachment of the witness.

"There is an important distinction between calling for a statement at a deposition and calling for a statement at a trial during cross-examination. After an adverse witness has testified in the trial, opposing counsel, in order to effectively cross-examine, may be entitled to see and use previous statements of the wit-

ness." *In re Harris,* 216 F Supp 176, 180 (ED La 1963). To the same general effect see *Shaw v. Wuttke,* 28 Wis2d 448, 137 NW2d 649, 653 (1965).

In a criminal case we recognized this distinction between pretrial discovery and examination of statements of a witness for possible impeachment purposes. *State v. Foster,* 242 Or 101, 407 P2d 901 (1965). We held that it was not error to deny a request for pretrial examination of witnesses' statements, whereas it was error to deny to defense counsel the right to examine the statement of a witness who had testified.

■ That the request to inspect was not made in pretrial discovery also answers the defendants' contention that the document was not available for examination because it was the work product of a lawyer.

Defendants rely upon *Hickman v. Taylor,* 329 US 495, 67 S Ct 385, 91 L Ed 451 (1947), for their claim of work product immunity. The decision held that witnesses' statements taken by the defendant's attorney were not subject to pretrial discovery unless the plaintiff could show "good cause" why they should be subject to discovery. Statements taken by an attorney were referred to as "work products" of a lawyer and, therefore, partially immune from pretrial discovery. ORS 41.615 incorporated the "good cause" requirement of *Hickman v. Taylor,* supra (329 US 495), for pretrial discovery of witnesses' statements.

Whatever immunity from examination is granted to witnesses' statements upon the ground that such statements are a lawyer's work product, is not available at this stage of the proceeding. It is not applicable when there is a request to examine a statement referred to by a witness.

A majority of the Wisconsin court in *Shaw v. Wuttke,* supra (28 Wis2d at 456), held: "[T]he im-

munity of the attorney's work product in respect to a written statement ceases to exist when the person making the statement is placed on the stand as a witness at the trial."

■ The trial court stated it would not grant the examination because the statement contained no admissible evidence. The test is not always whether the statement sought to be inspected is admissible into evidence. In *Waterway Terminals v. P. S. Lord,* 242 Or 1, 55-61, 406 P2d 556, 13 ALR3d 1 (1965), defense counsel "refreshed the memory" of a witness called by plaintiff by reading from a pretrial statement given by the witness. We held plaintiff's counsel was entitled to inspect that statement: "However, whether opposing counsel was entitled to inspect the transcript does not depend on its admissibility in evidence, but on considerations of common fairness in the trial of a lawsuit. * * *." 242 Or at 58.

However, in the present case the statement could have been admissible. As we stated, the contents of this particular statement have become relevant. If the statement does not contain the statement that Hood testified it did, it becomes very material as impeaching evidence.

■ The question arises whether the failure to require defendants to produce the statement was prejudicial. One of the defendants' principal defenses was that the fire had been started by these boys, including Jane Davis's brother. Defendants sought to develop this defense by cross-examination of plaintiffs' witnesses and examination of Hood. The trial court had admitted testimony by Hood that he told Sgt. Ayers that other people had told him that they had heard Jane Davis say her brother had told her he started the

fire. Hood had testified that Jane Davis had signed a statement to that effect. If that statement did not so state, his defense could appear to the jury as ill-founded and the credibility of all of defendants' defense could be affected.

In answer to Mr. Justice HOWELL's dissent, we agree that the intentions of plaintiffs' counsel were not clearly articulated. However, we cannot envision that plaintiffs' counsel would want to examine the statement for any purpose other than possibly to impeach Hood.

Likewise, we cannot ascertain any reason why plaintiffs' counsel would intend to waive his motion to produce by making a motion to strike Hood's testimony. That plaintiffs' counsel was mistaken in his initial belief that Hood had never told Ayers that Hood had a statement from Jane Davis or in his belief that Hood had shown the statement to Ayers does not provide any reason for plaintiffs' counsel to forego his motion to produce. If Hood said he had a statement and that the statement did not say what Hood said it did, the statement would be most effective impeachment. Our opinion is strengthened by the fact that none of defendants' counsel have ever suggested that plaintiffs' counsel intended to waive its motion to produce.

■ We hold that the error was prejudicial. For this reason, the cause must be remanded; however, it need not necessarily be retried. Upon remand, the trial court shall order the statement of Jane Davis submitted to the court and counsel for inspection. If the document does not state that Jane Davis's brother told her he started the fire, or if the document is ambiguous on this point, a new trial should be had. If the document does relate that her brother told her he

started the fire, the judgment for the defendants shall be reinstated.

We have the authority to make such a mandate. In *State v. Brewton*, 238 Or 590, 395 P2d 874 (1964), we found it possible to tailor the relief granted so as to accommodate the changing tides of criminal procedure. *Jackson v. Denno*, 378 US 368, 84 S Ct 1774, 12 L Ed2d 908, 1 ALR3d 1205 (1964), required that the trial court make a finding upon the issue of whether a confession was voluntary. The trial court had not done this. We, therefore, remanded the case and gave the state the option of having a hearing by the trial court to determine whether the confession was voluntary or having a new trial. If the state elected the first alternative and the trial court determined the confession was voluntary, the trial court was directed to enter a new judgment of conviction. If the trial court found the confession involuntary, the trial court was instructed to enter an order giving the state the choice whether to try Brewton without the confession or to release him.

The closest analogy in civil cases is found in those decisions in which the plaintiff received a verdict but we found on appeal that error was committed with reference to damages. We have remanded but limited the issues on new trial to those concerned with damages and permitted the finding of liability to stand. *Brown v. Bonesteele*, 218 Or 312, 335, 344 P2d 928 (1959); *Skultety v. Humphreys*, 247 Or 450, 458, 431 P2d 278 (1967). In *Brown v. Bonesteele*, supra (218 Or at 335), we stated: "Under appropriate circumstances this court may remand a case for a new trial on a part only of the issues raised in the original proceeding."

344

In the event of a new trial, another issue which was the subject of an assignment of error may arise again and we should rule upon it at this time.

■ The defendants called an organic chemist as a witness. He testified he had been retained by the defendants to give them information about the circumstances under which a combination of linseed oil and sawdust could cause spontaneous combustion. He stated that he examined the literature in the field and found nothing of assistance. For this reason the chemist conducted certain tests to determine or verify the factors affecting the combustibility of a mixture of linseed oil and sawdust. The plaintiffs objected to the evidence of these tests and the conclusions drawn by the witness which were based upon these tests. The trial court received the evidence.

The witness found that a relatively large mass of oil soaked sawdust is necessary to start combustion. This is because a certain amount of the heat generated by exposing the oil to the oxygen of the air is diffused into the air and not into the sawdust. The chemist determined that by mixing a certain amount of oil with a like amount of sawdust. He found that mixing 30 grams of oil with 30 grams of sawdust, or mixing any lesser equal amounts, would not generate enough heat to start a fire. A mixture of 40 grams of oil to a like amount of sawdust, or larger equal amounts, would produce combustion.

Another test objected to was conducted to determine if exposing the oil to the air before mixing it with the sawdust had any effect. It was found it had an important effect. The longer the oil was exposed to the air before mixing with sawdust, the faster the mixture of oil and sawdust heated.

The plaintiffs' objection was upon the ground that the experiments or tests were not conducted under the same or similar circumstances to those which plaintiffs contend caused the fire. It was admitted by the witness and defendants' counsel that the circumstances were not similar; however, this does not render the evidence inadmissible.

The purpose of these experiments was to determine or verify certain characteristics of the materials. The purpose was not directly to prove that the mixture of oil and sawdust on defendants' premises did not cause the fire.

McCormick states: "* * * It seems also that experiments designed to show the general traits and capacities of materials involved in the controversy might often reasonably be admitted in evidence without confining such experiments to the conditions surrounding the litigated situation." McCormick, Evidence, 361 (1954).

An illustrative decision is *Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co.*, 257 F2d 93, 99 (10th Cir 1958). In that case a grain storage bin exploded. The plaintiffs introduced motion pictures of experiments about "such matters as the presence of voids in stored wheat, loading and explosive pressures on the bottom, center, and top of a tank filled with wheat, and the transmission and effect of an explosive force. There was no claim that the conditions and situations involved in the experiments were identical or substantially similar to those existing in the plaintiff's elevator at the time of the breakout." 257 F2d at 99. The court held the evidence admissible and commented:

"It is clear that the experiments were pre-

sented to show principles and not to show what actually occurred. Defense counsel do not contend that an expert may not state the principles on which he bases an opinion. Indeed, in a case such as this, expert testimony would be of little value unless such principles were both stated and tested by cross-examination. * * *." 257 F2d at 99.

The evidence was admissible.

Reversed and remanded with instructions.

HOWELL, J., dissenting.

I do not agree with the majority that the trial court erred in refusing plaintiffs' motion to require defendants' counsel to produce the statement in question.

When Hood testified that he had told, or had attempted to tell, Sgt. Ayers about various statements allegedly made by Jane Davis to others that her brother started the fire, the plaintiffs objected on the grounds that it was an attempt to impeach *Ayers* on a collateral matter, and later, that a proper foundation had not been laid for impeaching testimony. Arguments were heard on the objection, and it was at this time that counsel for defendants stated that he had a statement made by Jane Davis before a court reporter, but that it contained a lot of "garbage." Plaintiffs again objected to further references to statements by Jane Davis on the ground of hearsay. The court inquired of defendants' counsel if he were offering the evidence as impeaching evidence of Sgt. Ayers. Counsel said he was only offering it to show that Ayers made a "lousy investigation" of the fire. The court then overruled the plaintiffs' objection to the testimony on the ground that the evidence was substantive evidence challenging the basis of Ayers' opinion.

After concluding his cross-examination of Hood,

plaintiffs' counsel then requested that defendants be required to produce the written statement given by Jane Davis before the court reporter. Plaintiffs' counsel stated:

"MR. LUVAAS: Okay. We believe we have the right to require this document produced so that we might inspect it as we have no knowledge whatsoever as to anything, except what this witness has just stated on the witness stand. In the event Counsel fails or refuses to do so, we would contend that the document disavowed any admission or statement by Steven Reynolds to the deponent as to the matter in question, and denied that he had admitted setting this fire in this manner, and we would request the Court to instruct the Jury to that effect in accordance with sub-section 2 of ORS 41.615. I would also refer you to the Green Book on Evidence, Sections 13.3 and 13.6 on notice to produce."

Defendants' counsel then argued that the statement was his "pure work product" and that "Mr. Luvaas has no right to it." Plaintiffs' counsel stated:

"MR. LUVAAS: The implication left the Jury by their witness was that this was a deposition which means a great deal. They know they're under oath before a Court Reporter. There was also an inference, and that's the whole purpose of all of these things we have been going through pertaining to this phantom witness, that she has stated repeatedly, and to the diverse persons that her brother set the fire and told her he set the fire in one way or another. We don't know which way he even supposedly set it; one of those statements that was offered as one of the proffered exhibits 39 through 43 says it's been fusees, and we also know there were two fires, so it's highly questionable exactly which fire this nine-year-old boy would have been talking about, and he was a nine-year-old boy.

"We are not permitted to cross-examine the boy. We can't find him. We are not permitted to cross-examine his sister. We never heard of her until just now, until Mr., they questioned Sgt. Ayers about her, and the Jury is left with the impression that this girl has stated this to a number of people, and that they have her sworn deposition in proof thereof.

"We are certainly entitled—Now, it may be a work product if Counsel so alleges, because it's a statement taken in his office, but if he is going to bring before this jury such a statement taken in his office, he had better let me see it, because I have a right, in all fairness, to see it."

The court denied plaintiffs' motion to produce. Counsel then stated that he would like time to "subpoena the record" and for further cross-examination after he had examined the record. After further colloquy with the court plaintiffs' counsel requested leave "to ask a few more questions of him [Hood] now." The court granted permission and then stated that he wanted to explain his reasons for denying plaintiffs' motion to produce. The court stated:

"* * *. Secondly, if it's anything, it's at most a statement made by a person and, to be perfectly frank with you, there is nothing that I have heard attributed to her which would be admissible if she came in here and tried to say it. The only reason the Court has permitted any of this in is because it gives the Jury an ability to know what Ayers knew on the day he sat here on the witness chair and said he believed the kids, and that's all it does, and if the, either defendant tried to offer that statement here, I know of no theory by which it can be received, and if you tried to offer it, I know of no theory by which it could be received, because it didn't even exist, according to the evidence we have so far, at the time that the last witness was talking to Sgt. Ayers. It came into being only recently.

"MR. ATHERLY: Actually that was wrong, for whatever it was worth, he didn't have the statement in front of him, but the statement was actually taken on September 17th, and the witness talked to Sgt. Ayers on about September 19th.

"THE COURT: *But, in any event, he never presented the statement to Sgt. Ayers. There is no evidence of that.*

"MR. ATHERLY: *That's correct, Your Honor.*

"MR. LUVAAS: *Well, Your Honor, under that clearing up of the error,* I will move at this time that this entire testimony pertaining to this be stricken from the record, and the Jury be instructed to disregard it because this is exactly what Sgt. Ayers said, that Mr. Hood represented to him in the last conversation just a few weeks ago that they had obtained some kind of a statement from Janie, I think that was her name, Janie, or Jeanie, or whatever her name was, but it was kind of ambiguous, and wasn't satisfactory as any direct statement of anything or that her brother had really said anything.

"Now, I recall that testimony very correctly, and that she had refused to sign something. Now, this is obviously then the thing that Sgt. Ayers was referring to so it's no impeachment, because it isn't inconsistent with what he said.

"Therefore, since it's not inconsistent, it does not discredit his testimony in any way or discredit his investigation because it's exactly the same conclusion he reached.

"THE COURT: You can argue that to the Jury.

"MR. LUVAAS: Well, our motion, nevertheless, will be on those grounds, to strike the questions and the answers in their entirety pertaining to Hood's conversations with Sgt. Ayers, and, Your Honor, we will further move then that the Court instruct the Jury as to the exact limited purposes for which they were permitted to hear this type of

testimony, and that it cannot be considered by them as substantive evidence." (Emphasis supplied.)

The motion to strike was denied.

I do not believe that the record shows that plaintiffs wanted the Davis statement, which was taken before the court reporter, to impeach Hood's testimony. Throughout the objections to Hood's testimony and the argument before the court, plaintiffs were objecting because of the attempted impeachment of *Ayers*. Moreover, when it was agreed that this particular statement had not been presented by Hood to Sgt. Ayers, plaintiffs' counsel stated, "Well, Your Honor, under that clearing up of the error" he would move to strike all of Hood's testimony regarding Hood's conversations with Sgt. Ayers because it was not impeaching evidence. I believe that the demand for the production of the particular Davis statement in question was waived when counsel stated "with that clearing up of the error" he would then move to strike Hood's testimony.

Under this state of the record I do not believe any reversible error was committed when the court refused plaintiffs' motion to produce.

I also disagree with the majority's procedure of remanding the case to the trial court for inspection of the Davis statement and a determination of its contents to decide whether a new trial should be allowed or the judgment reinstated. This is an absolutely novel procedure to be adopted by this court in reversing and remanding a case for a new trial. The authorities cited by the majority involve cases where liability was established, and the case was remanded for a trial only on the issue of damages. I appreciate the majority's mo-

tive in wanting possibly to avoid another lengthy trial, but on a remand for a new trial this court has no authority to require the trial court to hold a separate hearing to determine the contents of a particular document, whether certain evidence is admissible or prejudicial, or, in this case, to take any action except to proceed with a new trial.

I would affirm.

## ON PETITION FOR REHEARING

On appellants' and respondents' petitions for rehearing, filed January 4, 1972. Former opinion filed December 15, 1971, 261 Or 333, 491 P2d 1023.

352

Paul D. Clayton and Luvaas, Cobb, Richards & Fraser, Eugene, for appellants' petition.

Darst B. Atherly and Thwing, Atherly & Butler, Eugene, for respondent Century Home Components, Inc.'s, petition.

Richard Bryson and Windsor Calkins and Bryson & Robert, Eugene, for respondent Wood Components Co.'s petition.

DENECKE, J.

When we initially decided this case, we were of the opinion that the testimony of the witness Hood was that he had told Sgt. Ayers that he, Hood, had a statement from Jane Davis either that her brother told her he had started the fire or that she had told other people that her brother had told her he started the fire. Petitions for rehearing were filed alleging that this was incorrect. Defendants state that they have no such statements and never so contended.

A restudy of the transcript leaves us in doubt. We conclude, however, that the jury could well have inferred that such statement existed. If the jury did draw this inference it might be less likely to find that the defendants caused the fire. Because of this, the trial court should have permitted the plaintiffs' counsel to inspect the statement of Jane Davis. Questioning of the witness Hood concerning the contents of the statement would have informed the jury what Jane Davis said or did not say in the statement. The plaintiffs, therefore, were prejudiced by not being permitted to examine the statement.

That part of our opinion conditioning the granting of a new trial upon the contents of the statement is withdrawn. The case is remanded for a new trial.