TOOKEY, J.
*77 In this personal injury case, defendant appeals a judgment awarding plaintiff economic and noneconomic damages, contending that plaintiff's evidence was insufficient to show that plaintiff suffered permanent injury. Consequently, defendant contends, the trial court erred in instructing the jury on permanent injury and presenting the jury with information from mortality tables. We agree with defendant and, accordingly, reverse and remand.[1]
We summarize all the relevant evidence to evaluate "whether there was some evidence in the record from which the jury could have reached a verdict that was consistent with the [challenged] instruction." Montara Owners Assn. v. La Noue Development, LLC , 357 Or. 333, 349, 353 P.3d 563 (2015) (internal quotation marks omitted); see also id. at 348, 353 P.3d 563 ("An instruction can * * * be erroneous because there is no evidence in the record to support giving the instruction.").
It is undisputed that plaintiff, who was 78 years old at the time of trial, was walking by the road near a curve when the side-view mirror of defendant's car hit his arm, causing him to spin around and fall down. Plaintiff was taken to a hospital, where he remained overnight. At trial, the parties disputed whose negligence-defendant's or plaintiff's-caused plaintiff's injuries. They also disputed the amount of plaintiff's damages. The question relevant to our analysis is whether plaintiff presented sufficient evidence to establish that he suffered a head injury that was permanent. On that subject, plaintiff presented testimony from himself, Barmanche, and Schaible.
Schaible, a physical therapist, testified that plaintiff was referred to her by a doctor because plaintiff returned to the hospital a week after the crash suffering from symptoms of a concussion sustained during the crash.[2] Those symptoms included sensitivity *181 to sound, shoulder pain and reduced *78 range of motion in his neck, headaches, vision issues, and "obvious memory and concentration issues." Over several months during which plaintiff received physical therapy, occupational therapy, and speech therapy, he made good progress in his ability to walk and balance. Overall, plaintiff did quite well.
Plaintiff testified about his symptoms after the crash. He also testified that, at the time of trial, 18 months after the crash, he still had headaches, mood problems, and memory issues as a result. After the crash, he felt "goofy" and "that doesn't change very much. It depends on how uptight I get. How much-how much you-how nervous I get." He explained that, since the crash, he had "problems with my head, my mind wasn't working right. I couldn't remember things. I couldn't hold onto anything. * * * I'd be talking to you and then I'd just-* * * If I didn't keep talking, I'd forget what I was talking about." That problem continued at the time of trial.
Barmanche, a retired emergency room physician, testified that concussion-related symptoms like the symptoms plaintiff experienced after the crash "can last from days to weeks to months to years even following minor concussive events." "[H]ead injuries that were thought to be very minor can have prolonged long-lasting consequences on a long-term basis. And then, probably more so in an elderly patient than in the younger patient * * * how long those symptoms can last."
Plaintiff's counsel asked Barmanche about "the longer term effects in your experience of a brain injury, of a concussion, post-concussive syndrome in a man like [plaintiff] in his state? What types of things and symptoms would he see and how long would they likely last?" Barmanche responded,
"I mean, it's impossible to say. About 15 percent of patients that sustain minor head trauma-that is, if they don't have anything that's detectable on a CAT scan, but they've been hit or concussed-about 15 percent of those patients * * * will develop long-term symptoms that may last from months to years following even a benign-what appears to be a benign blow to the head."
*79 Barmanche testified that "[i]t's really unpredictable about who is going to experience those types of symptoms, when they're going to come on and how long they're going to last."
Plaintiff asked the court to instruct the jury on permanent injury and plaintiff's life expectancy as reflected on mortality tables. Defendant objected, contending that neither Barmanche's nor Schaible's testimony showed that plaintiff's head injury was a permanent injury. Plaintiff contended that the testimony was sufficient because it showed that "these types of head injuries can last for years down the road, and he's still having symptoms today. So, I think that goes directly to his future damages, so I think that instruction is completely on point." The court agreed and instructed the jury as follows:
"If you find that plaintiff is entitled to recover for permanent injury, you must determine the plaintiff's probable life expectancy, taking into consideration all evidence bearing on that issue, such as plaintiff's occupation, sex, health, habits and activities.
"Life expectancy shown by the mortality tables is an estimate of the probable average remaining life of all persons in our country of a given age. According to the standard mortality tables, the life expectancy of a man age 78 years is an additional 10.80 years. This is a fact you may consider in arriving at the amount of damages."
The jury found that both parties were negligent, apportioned 85 percent of the fault to defendant and 15 percent to plaintiff, and awarded plaintiff economic and noneconomic damages.
Defendant appeals, assigning error to the court's instruction on permanent injury. Parties are entitled to jury instructions consistent with their theory of the case if the instructions correctly state the law, are based on the pleadings, and are supported by the evidence. Hernandez v. Barbo Machinery Co. , 327 Or. 99, 106, 957 P.2d 147 (1998).
*182 As noted above, here, our task is to evaluate "whether there was some evidence in the record from which the jury could have reached a verdict that was consistent with the instruction." Montara Owners Assn. , 357 Or. at 349, 353 P.3d 563 (internal quotation marks omitted). If there was not, we must determine *80 whether the instruction substantially affected defendant's rights. Id. at 345, 353 P.3d 563 (citing ORS 19.415(2) ).
A permanent injury is an injury that "will last during the life of the injured person." Skultety v. Humphreys , 247 Or. 450, 455, 431 P.2d 278 (1967). That is different from future pain and suffering, which need not last for the person's lifetime. Id. at 456, 431 P.2d 278 ("[F]uture pain and suffering is a proper element of damages without proof that the injury is permanent."). To prove that the defendant's negligence caused a particular injury, "the evidence must be sufficient to establish that such a causal relationship is reasonably probable and * * * for this purpose testimony that an injurious consequence is 'possible,' rather than 'probable,' is not sufficient." Feist v. Sears, Roebuck & Co. , 267 Or. 402, 407, 517 P.2d 675 (1973). Thus, the question here is whether plaintiff presented evidence from which the jury could find that it was reasonably probable that plaintiff's head injury would last for his lifetime.
We conclude that plaintiff's evidence did not meet that standard. Although plaintiff presented evidence that his injury persisted at the time of trial and, based on that fact, that it would likely persist for some period into the future, there was no evidence from which the jury could find that it was reasonably probable that plaintiff's injury would last for his lifetime.
Schaible did not testify at all about the permanency of plaintiff's injury. Plaintiff himself testified only that his symptoms continued at the time of trial. Barmanche's testimony indicated that plaintiff was in the 15 percent of people who suffer long-term symptoms after a head injury like plaintiff's. Consequently, Barmanche's testimony provided the jury with a basis on which to find that plaintiff would suffer symptoms "from days to weeks to months to years" after the crash and that the symptoms would last longer than average in plaintiff because of his age. Because the trial took place three years after the crash, plaintiff's evidence established that he was still suffering symptoms for sometime afterwards. But Barmanche's testimony provided the jury with no way to evaluate whether plaintiff's injury would last for the rest of plaintiff's life rather than for a *81 few more months or a few years. Instead, Barmanche testified that "[i]t's really unpredictable" "how long [those symptoms are] going to last." From plaintiff's evidence, the jury could not find that it was reasonably probable that plaintiff's injury would persist for the rest of his life; any conclusion on that question would be purely speculative.
Plaintiff contends that, notwithstanding his failure to present evidence that his injury would continue for his lifetime, we must assume that an injury that has lasted three years, as his has, is permanent. Plaintiff asserts that, under Supreme Court case law, when "there is no way for a medical expert to predict whether [or] how long [the plaintiff's] symptoms will last," we instead consider the "length of time" during which the injury has already persisted to decide whether the injury is permanent.
We understand the cases on which plaintiff relies to stand for the principle that a jury can find that an injury is permanent when there is evidence that the plaintiff 's injury will last for the plaintiff 's lifetime or when common knowledge allows an inference that the injury will last for the plaintiff 's lifetime. See, e.g. , Hansen v. Bussman , 274 Or. 757, 773-74, 549 P.2d 1265 (1976) (holding that the plaintiff presented sufficient evidence of permanent injury concerning a dislocated hip where the bones of the hip socket had failed to develop sufficiently to hold the hip in place and attempts to treat the problem had failed); Russell v. Mount Hood Railroad Co. , 267 Or. 335, 337, 517 P.2d 276 (1973) (the plaintiff offered sufficient evidence of permanent injury where the plaintiff 's symptoms had lasted five years, the plaintiff had arthritis, and a doctor testified that " 'once [arthritis ] starts it is with the individual the rest of his days' "); Hesse v. Mittleman , 145 Or. 421, 425, 27 P.2d 1022 (1934) (there was sufficient *183 evidence of permanent injury where there was testimony that the plaintiff 's coccyx was fractured and deviated to the right, that the injury had not improved in 19 months, and that the usual treatment was surgery); Barron v. Duke et al. , 120 Or. 181, 192, 250 P. 628 (1926) (there was sufficient evidence of permanent injury where the doctor's testimony was understood by the parties to indicate that "the usual 'likely' and 'probabl[e]' result of [the plaintiff 's] *82 injury would be 'epilepsy,' or some other 'serious' or 'permanent injury' ").
As explained above, here, plaintiff did not present evidence that his condition would last for his lifetime. Nor is it common knowledge that symptoms of a head injury like plaintiff's will last for any particular length of time.
Plaintiff points out that at least one of the Supreme Court's cases can be understood to allow a finding of permanent injury based only on the persistence of symptoms that are not obviously permanent. In Lewis v. Portland Ry. L. & P. Co. , 59 Or. 314, 317-18, 117 P. 423 (1911), the plaintiff suffered a back injury in a rail crash. At trial, five months later, the plaintiff testified that her back remained very painful and "that there had been no perceptible improvement for several months." Id. at 316, 117 P. 423. The plaintiff's physicians testified that, "with proper treatment, it was at least probable that she might recover her usual state of health and strength." Id. The court held that the trial court had not erred in rejecting the defendant's request for an instruction stating that the plaintiff had not adduced evidence of permanent injury. Id. at 317, 117 P. 423. The court explained,
"The fact that five months after the injury the pain in plaintiff's back still continued without sensible abatement, and that she was still unable to perform her household duties, that her weight continued to be 20 pounds less than normal, and her nervous condition was unabated, might justly lead a reasonable man to conclude that the consequences of the injury would continue indefinitely."
Id .
Significantly, to the extent that the court reasoned in Lewis that the fact that the plaintiff's injuries had lasted for five months before trial demonstrated that her injuries were permanent, the Supreme Court later rejected that reasoning in Skultety . There, the plaintiff was injured in a car accident and testified that, a year and a half after the accident, she still suffered from headaches and neck pain, and she was not able to do any lifting. 247 Or. at 453, 431 P.2d 278. Her doctor testified that "I would think that she will be incapacitated in the future," but could not say for how long. Id.
*83 The Supreme Court determined that evidence supported a finding of future pain and suffering, but it could not support a finding of permanent injury. Id. at 456-57, 431 P.2d 278. The court explained that its previous case law had sometimes conflated permanent injury and future pain and suffering:
"At the outset we wish to emphasize the distinction between future pain and suffering and permanent injury. They are not the same and the failure at times to distinguish between them may have caused some confusion in our cases. In the context of personal injury litigation a permanent injury is generally defined as one which will last during the life of the injured person. In Perry v. Pickwick Stages of Oregon , 117 Or. 598, 605, 243 P. 787 (1926), this court said that permanent injury includes * * * future pain and suffering. Although permanent injury will usually include future pain and suffering, the reverse is not true; there may be future pain and suffering without permanent injury."
Id. at 455-56, 431 P.2d 278 (citations and footnote omitted).
Because the plaintiff's evidence failed to show that her injury was permanent, the Supreme Court concluded that the trial court had erred in refusing to withdraw the issue of permanent injury from the jury's consideration. Id. at 457-58, 431 P.2d 278. For the same reason, the court had erred in instructing the jury to consider the plaintiff's life expectancy in determining the amount of damages. Id. at 458, 431 P.2d 278.
A few years after it decided Skultety , the Supreme Court applied similar reasoning in Feist . There, the plaintiff had suffered skull *184 fractures that caused "tearing of the lining of the skull or brain." 267 Or. at 404, 517 P.2d 675. The plaintiff's doctor testified that, "based upon a reasonable medical probability," the tear made the plaintiff susceptible to contracting meningitis ; that is, it was possible, but not probable, that the plaintiff would actually contract meningitis as a result of her injury. Id. at 405-06, 517 P.2d 675. There was also testimony relating to the plaintiff's scars and that the injury had caused one of the plaintiff's pupils to be larger than the other and one of her eyelids to droop, and that those injuries were permanent. Id. at 406, 413, 517 P.2d 675.
On appeal, the defendant contended that the trial court had erred in allowing testimony about the plaintiff's *84 susceptibility to meningitis because it was merely possible, not probable, that the plaintiff would contract meningitis as a result of her injury, and by instructing the jury that it could consider susceptibility to meningitis in its award of damages. Id . at 403, 517 P.2d 675. The court explained that, "to establish the necessary causal relationship to support recovery in a personal injury case, the evidence must be sufficient to establish that such a causal relationship is reasonably probable and * * * for this purpose testimony that an injurious consequence is 'possible' rather than 'probable' is not sufficient." Id. at 407, 517 P.2d 675. However, the court distinguished evidence of the plaintiff's condition of being susceptible to meningitis from evidence of permanent injury. Id. at 408-13, 517 P.2d 675. The court explained:
" 'In many cases of personal injury the honest opinion of a doctor may well be that a plaintiff will "gradually improve" or that the injury may "possibly be permanent or may possibly get better within a year." This uncertainty of honest medical opinion should not be the basis for any finding by the jury of permanent injury but is sufficient, on the other hand, for the jury to find some future disability.' "
Id. at 409, 517 P.2d 675 (quoting Boyle v. Pennsylvania Railroad Company , 403 Pa. 614, 170 A.2d 865 (1961) ). Accordingly, the court held that the trial court did not err in admitting the plaintiff's doctor's testimony "relating to the susceptibility to meningitis * * *, even though meningitis was not probable, but was no more than a possibility." Id . at 410, 517 P.2d 675.
As noted, the defendant had also assigned error to the trial court "instructing the jury that it could consider susceptibility to meningitis in its award of damages." Id. The trial court instructed the jury that,
"before an injury is compensable, before you can fully compensate for an injury or disability, you must find it has been proven by a preponderance of the evidence, or is probable.
"What if you have something that is proven to you as being probable as a probability there will be a susceptibility, a special susceptibility to injury or disability or disease because of the injury.
"Well, what I am saying is, you can't compensate the plaintiff for probably having meningitis in this case, but *85 you can compensate if you choose to, and if it's been proven to you by the evidence that plaintiff has susceptibility for such a future problem.
"I instruct you, before you can award plaintiff any sum of money for alleged permanent injury or conditions, you must be convinced by a preponderance of the evidence that the permanent injury or condition is probable. It is not sufficient that permanent injury or condition is merely possible ."
Id . at 411, 517 P.2d 675 (emphasis added).
The Supreme Court reiterated that evidence of a possibility of permanent injury cannot support a finding of permanent injury:
"[M]edical testimony to the effect that, as the result of a serious physical injury, there will be a 'predisposition' to the contracting of some disease, i.e. a possibility, is not sufficient evidence to support an award of damages for permanent injury and cannot be properly considered by a jury for that purpose."
Id. at 412, 517 P.2d 675. The court concluded, however, "that such testimony is sufficient as the basis for a finding by the jury of some disability" because "there was medical testimony *185 that, based upon a reasonable medical probability," the plaintiff "is susceptible to contracting meningitis" and, therefore, the trial court "properly instructed the jury that in awarding damages it could consider the evidence that plaintiff has susceptibility for such a future problem." Id . at 413, 517 P.2d 675 (internal quotation marks omitted). Additionally, because the trial court had instructed the jury correctly "upon the requirements to be satisfied before making an award for permanent injuries," and the plaintiff had presented evidence that she had suffered permanent injury, "including testimony relating to plaintiff's scars, drooping eyelid, and the slight difference in size of the pupils of her eyes," the court affirmed. Id.
Thus, in Skultety , the court clarified the relationship between future pain and suffering and permanent injury and held that, while the persistence of injuries like plaintiff's up to the time of trial may demonstrate a likelihood of future pain and suffering, it does not necessarily demonstrate permanent injury. In Feist , the court expressly *86 confirmed that an award of damages for permanent injury requires evidence of a probability, not just a possibility, that the injury is a permanent one. Given those holdings, we are not persuaded by plaintiff's reliance on Lewis . Because plaintiff did not present evidence that his injury would probably last for his lifetime, and because common knowledge did not allow the jury to infer that his injury would probably last for his lifetime, the trial court erred by instructing the jury on permanent injury and providing evidence of mortality tables. See Skultety , 247 Or. at 458, 431 P.2d 278 ; Zimmerman v. Ausland , 266 Or. 427, 431, 513 P.2d 1167 (1973) ("[T]he admissibility of evidence of mortality tables in a personal injury case is dependent upon evidence that the injury is permanent.").
The error substantially affected defendant's rights. ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). To require reversal under ORS 19.415(2), "an error must-in an important or essential manner-have materially or detrimentally influenced a party's rights; it is insufficient to speculate that the error might have changed the outcome in the case." Purdy v. Deere and Company , 355 Or. 204, 225, 324 P.3d 455 (2014). An instructional error satisfies ORS 19.415(2)"if, 'when the instructions are considered as a whole in light of the evidence and the parties' theories of the case at trial, there is some likelihood that the jury reached a legally erroneous result.' " Dosanjh v. Namaste Indian Restaurant, LLC , 272 Or. App. 87, 92, 353 P.3d 1243 (2015) (quoting Purdy , 355 Or. at 232, 324 P.3d 455 (brackets omitted) ); see also Sherertz v. Brownstein Rask , 288 Or. App. 719, 727, 407 P.3d 914 (2017) ("If there is little likelihood that an error affected the verdict, we may not reverse; if there is some likelihood or a significant likelihood that the error affected the jury's verdict, we must reverse." (Internal quotation marks omitted.) ).
By instructing the jury on what to do if it found permanent injury, the instructions erroneously implied that the jury could find that plaintiff had suffered permanent injury. Furthermore, the instructions erroneously instructed the jury to consider evidence from mortality tables to arrive at a damages award. In closing argument, plaintiff's attorney repeatedly referred to the permanence of plaintiff's injury *87 and plaintiff's 10.8-year life expectancy in the course of arguing about plaintiff's damages. Because the erroneous instructions invited the jury to speculate that plaintiff had suffered permanent injury and plaintiff's attorney emphasized those instructions in his closing argument, there was some likelihood that the jury relied on the erroneous instructions and, consequently, reached a legally erroneous result. Accord Skultety , 247 Or. at 457-58, 431 P.2d 278 (where the trial court improperly allowed the jury to consider permanent injury and instructed the jury to consider the plaintiff's life expectancy, the error required reversal).
Reversed and remanded.

Judge Thomas W. Kohl presided over the trial, and Judge D. Charles Bailey, Jr., signed the judgment.

Plaintiff was not diagnosed with a concussion during his hospital stay, but Barmanche and Schaible testified that symptoms of concussion often appear after a few days.